UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| WORLDWIDE TRANSPORTATION SERVICES, INC., | Case No. 16-11136 |
| WORLDWIDE INVESTMENTS I, LLC, | Case No. 16-11183 |
| WORLDWIDE INVESTMENTS II, LLC | Case No. 16-11185 |
| WORLDWIDE INVESTMENTS III, LLC | Case No. 16-11189 |
| Debtors. | |

_____/

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED CREDIT AND USE CASH COLLATERAL, (II) GRANTING LIMITED STAY RELIEF FOR THE LENDER TO PERFECT POSTPETITION LOAN AND (III) SCHEDULING FINAL HEARINGS**

**(EMERGENCY HEARING REQUESTED)**

**This Motion will be considered on January 28, 2016 at 2:00 p.m. at the C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 8, Miami, FL 33128**

**<u>Statement of Exigent Circumstances</u>**

The Debtors submit that a hearing on this Motion is necessary on an emergency "first day" basis because if payroll is not made on Friday January 29, 2016 the Debtor, Worldwide Transportation Services, Inc.'s approximately 19 employees and 30 drivers will walk of the job causing a cessation of the Debtors' operations and triggering the Debtors' breach of its valuable contracts with various luxury hotels to whom the Debtor is obligated to furnish chauffeured limousines or livery vehicles for guests and visitors. The Debtors' request to obtain credit must be heard on an emergency basis so payroll can be funded and the Debtor can continue to operate for the next two months until their assets can be sold on a going concern basis to a Stalking Horse subject to higher and better offers.

Worldwide Transportation Services, Inc. ("<u>Worldwide</u>"), Worldwide Investments I,

LLC, Worldwide Investments II, LLC, and Worldwide Investments III, LLC (collectively, the

"Debtors"), by and through undersigned counsel, pursuant to Sections 105, 362, 363, 364(c) and (d) of the Bankruptcy Code, 11 U.S.C. 101 *et seq.* (the "Code"), Federal Rule of Bankruptcy Procedure 4001, 6003, 6004, 9014 and Local Rules 4001, 9013-(F) and (G) and Guideline For Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing, file this motion (the "Motion") seeking entry of an order (the "Interim Order") in the form attached as **Exhibit "A"** (I) authorizing the Debtors to obtain secured postpetition financing (the "DIP Loan") from MTV Florida, LLC (hereafter ("Lender") pursuant to Sections 364(c)(1) and 364(d) of the Code and granting adequate protection, if necessary, in connection therewith and limited stay relief;  II) authorizing the( Debtors use of cash collateral pursuant to Section 363 of the Code and granting adequate protection, if necessary, in connection therewith, (III) scheduling a final hearing to consider entry of a final order approving the DIP Loan and use of cash collateral (the "Final Order").

## INTRODUCTION

The Debtor provides ground transportation services for corporate events, roadshows, private aviation, airport transfers, sightseeing tours, sporting events, and other customized trips throughout South Florida, Atlanta, Chicago, Washington D.C., Los Angeles, and San Francisco. The Debtor utilizes a fleet of 71 corporate sedans, executive limousines and vans and maintains its corporate headquarters in Miami, Florida. The Debtor together with its predecessor-in-interest has operated its business since 2001. The debtors, Worldwide Investments I, LLC, Worldwide Investments II, LLC, and Worldwide Investments III, LLC collectively own forty-four of the For-Hire Limousine Service Licenses used in the operation of the debtor, Worldwide.

These Chapter 11 filings were precipitated by dozens of Worldwide's drivers suing Worldwide and its principal pursuant to the federal Fair Labor Standards Act alleging that they were improperly classified as independent contractors instead of employees and seeking damages for back pay, benefits and attorney's fees and costs. Worldwide also suffered operating losses because of the "unfair" competition of the ride sharing companies permitted to operating in Miami and Broward county without incurring the same regulatory expenses and other requirements that Worldwide must endure.

The DIP Loan and other relief contemplated by this Motion are in the best interests of the creditors and all interested parties as without the requested relief Worldwide will be unable to make its payroll due Friday January 29, 2016 and satisfy its pre-petition payroll obligations[1] and meet its other expenses going forward. Thus, the company will "go dark" and cease operating after Friday unless the relief is granted. The closure of Worldwide will result in a straight liquidation of the Debtors. The Debtors bankruptcy estates and the unsecured creditors and other interested parties will suffer irreparable harm if the Motion is not granted because if Worldwide ceases operations it and the related debtors will lose their fair market and ongoing concern value which greatly exceeds the Debtors' liquidation value. Also, if the Debtors cease operating and liquidate the collectability of Worldwide's substantial AR in the approximate of $1.5 M (aging less than 60 days) will be jeopardized.

---

[1] Worldwide is filing a first day motion seeking to pay priority pre-petition payroll which will be conditioned upon the employees and drivers agreement to continue working for the debtor, Worldwide for the next 60 days until the contemplated sale of the Debtors' assets can be completed.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

## STATEMENT OF RELIEF REQUESTED
## PURSUANT TO BANKRUPTCY RULE 4001(d)(1)(B)[2]

The Debtors seek an interim and final hearing on the Motion and the entry of the proposed Interim Order attached hereto as **Exhibit "A"** granting the following relief to avoid immediate and irreparable harm to the Debtors' bankruptcy estates: (I) authorizing the Debtors to obtain secured postpetition financing in the amount of $330,000 (the "DIP Loan") from MTG Florida, LLC (hereafter "Lender"), pursuant to Sections 364(c)(1) and 364(d) of the Code and the terms of the Senior Secured Debtor-In-Possession Credit Agreement attached hereto as **Exhibit "B"** (the "Loan Documents") and Approved Budget and granting adequate protection, if necessary, in connection therewith; (II) stay relief pursuant to Section 362(d)(1) of the Code for the limited purpose of permitting the Lender to perfect its security interests requested in the Motion; (III) authorizing the Debtors use of cash collateral in accordance with the Approved Budget pursuant to Section 363 of the Code and granting adequate protection, if necessary, in connection therewith, (IV) scheduling a final hearing to consider entry of a final order approving the DIP Loan and use of cash collateral (the "Final Order") pursuant to Federal Rule of Bankruptcy Procedure 4001.

Subject to the Carve-Out the Debtors propose that the DIP Loan shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case.

---

[2] The meaning of all defined terms included in this Statement are set forth *supra* or *infra*.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

Subject to the Carve-Out, the Lender shall be granted in accordance with Section 364(d) of the Code a senior priming lien ranking prior to all other claims and liens of the Debtors, which lien will be senior in priority to all security interests and liens securing the indebtedness and other obligations owing under any of the Debtors' prepetition loan and security agreements. The priming lien shall not be subject to challenge, but instead shall attach and become valid and perfected without the requirement of any further action by the Lender upon entry of the Interim Order.

## SUMMARY OF TERMS OF FINANCING

1.     Pursuant to Sections Bankruptcy Rules 4001, 6003, 6004, 9014 Local Rule 4001-2, 4001-3 and the *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "Guidelines") [CG-7], the Debtors attach hereto and incorporate herein the Approved Budget,[3] and below highlight in bold as well as summarize in bullet points  the essential terms of the proposed postpetition financing and .[4]

| Material Terms of Proposed Financing | Location in Loan Documents | Location in Proposed Interim Order |
|---|---|---|
| • **The lender shall be MTG Florida, LLC** | P 1 | P 3, ¶ E |
| • **The principal amount of the DIP Loan shall be $330,000 ("Principal Amount"). On an interim basis, the Debtors are seeking only $330,000 to avoid immediate and irreparable harm.** | P 2, Sec. 2.01(a) | P 4, ¶ M |

---

[3] A true and correct copy of the Approved Budget is attached hereto as **Exhibit "C."**

[4] For purposes of completeness, parties should refer to the terms and conditions contained within the Loan Documents attached hereto as **Exhibit "B."**

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

| | | |
|---|---|---|
| • Interest payable monthly in arrears at rate of 6% per annum (based on a 365 day year [364 leap year] and for the actual number of days elapsed). In the event of a default the DIP Loan shall bear interest at 8% per annum on any outstanding advances. | P 2, Sec. 2.03 | P 6, ¶ 4 |
| • The proceeds of the Loan will be utilized pursuant to the Approved Budget, including to make payroll and pay operating expenses through the sale of the Debtors' assets as a going concern. The Loan and the Carve-Out (as defined below) may not be utilized to prosecute any action against the Lender, whatsoever. | P 7, Sec. 3.05 | P 11 - 12, ¶ 14 |
| • The DIP Loan shall become due and payable in full on the earlier of (i) the date of completion of a § 363 Sale, or (ii) the Stated Maturity Date (the "Due Date"): | P 3, Sec. 2.04 | P 6, ¶ 6 |
| • The Debtors and Lender will continue to cooperate to develop an agreement for a sale of the Debtors' assets free and clear of liens and claims (under which Lender would provide the "stalking horse" purchase transaction and be entitled to credit bid the balance of the DIP Loan). | P. 10, Sec. 5.01(b) | |
| • As more fully described in the Loan Documents, subject to the Carve-Out, the Lender shall be granted the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case. As security for the DIP Loan the Lender shall be granted a valid, perfected, first priority priming lien on all real and personal property of the Debtors now owned for post-petition financing should "provide the whatever kind and nature, in each case, that is pledged as collateral under any document, Court Orders, or any other order of the Bankruptcy Court in this Chapter 11 Case (the "Collateral"). However the Collateral shall exclude and not include causes of action and recoveries pursuant to Chapter 5 of the Code. | P 14, Sec. 7.02 | P 8 - 9, ¶ 9 |

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

| | | P 3, ¶ H |
|---|---|---|
| **THE FOLLOWING ENTITIES MAY CLAIM AN INTEREST IN THE COLLATERAL BY VIRTUE OF A CLAIM OF LIEN AND SUCH INTEREST SHALL BE PRIMED THE AND LIENS OF THESE CREDITORS SHALL BE DEEMED SUBORDINATE TO THE PRIMING LIEN GRANTED THE LENDER:** | | |

**Advantage Auto Finance Company LLC (claimed lien against various vehicles of debtor, Worldwide);**

**American Express Bank FSB (claimed lien against all assets of debtor, Worldwide);**

**Associates Receivable Funding, Inc. (claimed lien against accounts receivable of debtor, Worldwide);**

**Fleet Financing Resources LLC (claimed lien against various vehicles of debtor, Worldwide);**

**Marc Motors, Inc. (claimed lien against various vehicles of debtor, Worldwide);**

**MMR Group, Inc. (claimed lien against all of the personal property of the debtor, Worldwide);**

**MTG Florida, LLC (claimed lien against certain licenses of all related Debtors);**

**National Leasing Services, LLC (claimed lien against various vehicles of the debtor, Worldwide);**

**On Deck Capital (claimed lien against tangible and intangible property of the debtor, Worldwide);**

**Santander Bank (claimed lien against various vehicles of debtor, Worldwide);**

**Signature Financing and Leasing LLC (claimed lien against vehicle of debtor, Worldwide);**

**TFC Equipment Finance (claimed lien against various vehicles of debtor, Worldwide);.**

**Titus Leasing Co. (claimed lien against various vehicles of debtor, Worldwide); and,**

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

| | | | |
|---|---|---|---|
| | Union Leasing (claimed lien against various vehicles of debtor, Worldwide). | | |
| • | The Debtor shall comply with all covenants contained with and more fully described in the Loan Documents. | P 10, Sec. 5.01(c) | P 4, ¶ K |
| • | Carve-Out of $65,000 from the DIP Loan for (i) all U.S. Trustee fees, (ii) fees due to the Clerk of the Bankruptcy Court; (iii) the actual fees and expenses incurred by professionals of the Debtors appointed in the Debtors' bankruptcy cases in the amounts incurred (and subsequently approved by the Bankruptcy Court). | P 7, Sec. 3.06 | P 11, ¶ 13 |

## I.     Jurisdiction and Background

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested herein are sections 105, 362, 364 and 507 of title 11 of the Code.

5.     On January 26, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11 of the Bankruptcy Code.

6.     The Debtors are operating their businesses and managing their affairs as debtors in possession. 11 U.S.C. §§ 1107(a) and 1108.

7.     In further support of this Motion, the Debtors rely upon the *Declaration in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief* (the "First Day Declaration").

## II.     Debtors' Business and Operations

8.     The operating debtor, Worldwide, provides ground transportation services for corporate events, roadshows, private aviation, airport transfers, sightseeing tours, sporting

events, and other customized trips throughout South Florida, Atlanta, Chicago, Washington D.C., Los Angeles, and San Francisco. The Debtor utilizes a fleet of 73 corporate sedans, executive limousines, and vans and maintains its corporate headquarters in Miami, Florida. The Debtor together with its predecessor-in-interest has operated its business since 2001. The related debtors, Worldwide Investments I, Worldwide Investments II, LLC, and Worldwide Investments III, LLC are holding companies collectively own forty-four of the For-Hire Limousine Service Licenses used in the operation of the Debtor.

### III.   Requested Relief

**A.   Approval of Financing Under Sections 364(c) and (d) of the Bankruptcy Code and Limited Stay Relief.**

9.      The Debtors seek approval of secured, post-petition loan from the Lender pursuant to the terms of the Loan Documents and proposed Interim Order in an amount sufficient to fund the Debtors' operations and estates through the sale of substantially all of their assets pursuant to Section 363 of the Code in a principal amount not to exceed $330,000. On an interim basis, the Debtors' seek approval of $330,000 in accordance with the Approved Budget, enabling the Debtors to, *inter alia,* pay the employees and drivers $180,000 as pre-priority back wages, pay "Farm Out" drivers hired to step in as chauffeurs for those drivers who already walked off the job because of the non-payment of their prepetition wages. *See* Approved Budget at **Exhibit "C"**. The Debtor's payroll is bi-weekly in the amount of $26,898.79. The request to obtain credit is made to avoid immediate and irreparable harm to the Debtors' estates which will result if Worldwide ceases operating because it lacks cash to carry on its business.

10.     The super-priority administrative expense claims and the senior priming liens granted to the Lender pursuant to the Interim Order and the Loan Documents shall be junior and

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

subordinate as to the Carve-Out, as defined in the Interim Order, to the fees due to the Clerk of the Court and fees due to the United States Trustee.

### 1.    Section 364(c)(1) Superpriority Lien

11.    Subject to the Carve-Out described herein, the Debtors propose that the DIP Loan shall have the highest administrative priority under § 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, §§ 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Chapter 11 Case or any successor case), and shall at all times be senior to the rights of the Debtors, any successor trustee or estate representative in the Chapter 11 Cases or any successor case (the "Superpriority Claims"). The Lender has not consented, through the Approved Budget or otherwise, to the imposition of any costs or expense of administration or other charge, fees, liens, assessment or claim (including, without limitation, any amounts set forth in the Approved Budgets) against Lender, its claims or collateral (including the Collateral) under § 506(c) of the Bankruptcy Code or otherwise, all of which rights the Debtors shall waive pursuant to the terms of an interim order granting this Motion and approving the Interim Financing.

12.    The Lender may require the Debtors to deliver to Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith. If Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Lender, in accordance with the

Loan Documents or the Interim Order, elects to take possession of any Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. The Lender may (in its sole discretion), but shall not be required to, file a certified copy of the Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property.

2.      **Section 364(d) Priming Lien and Limited Stay Relief.**

13.      Subject to the Carve-Out described herein, as security for the DIP Loan the Debtors propose granting the Lender pursuant to Section 364(d) of the Code a valid, perfected, senior priming liens and security interests in all of the Collateral (consisting of all real and personal property of the Debtors now owned or hereafter acquired) including, without limitation, licenses, vehicles, accounts, accounts receivable, customer contracts, customer lists, intellectual property, patents, trade secrets, property and/or leasehold rights, all other tangible and intangible assets. The priming lien EXCLUDES avoidance actions and recoveries pursuant to Chapter 5 of the Bankruptcy Code. Any security interest or lien upon the Collateral which is avoided or otherwise preserved for the benefit of the Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the DIP Loan. The Lender shall be granted limited stay relief for cause pursuant to Section 362(d)(1) of the Code for the purpose of formally perfecting its postpetition liens which shall be within its sole discretion. **For the avoidance of doubt, the Debtors do not seek to include Avoidance Actions, or any the proceeds thereof as part of the Collateral.**

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

14.     Through this Motion, the Debtors propose that the DIP Lender's senior priming liens shall be deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; provided, however, that the automatic stay imposed pursuant to Section 362 of the Code shall be deemed lifted for the limited purpose of allowing the Lender, at its sole option, to file or record or cause the Debtors to obtain third party consents or execute, file or record, at the Lender's expense any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as the Lender may require.

### 3.     The Carve-Out

15.     Debtors' seek approval for the payment of the Debtors' professional fees and expenses, fees of the United States Trustee and fees for the Bankruptcy Court from the Carve-Out from the Carve Out without further order of Court those fees and expenses that have been approved by the Court.

16.     The super-priority administrative expense claims and the liens granted to the Lender shall be junior and subordinate to the Carve-Out.

### IV.     Authority For Relief

### A.     The DIP Loan Should Be Authorized Pursuant to Section 364 of the Code.

The Code authorizes this Court to approve the DIP Loan in the manner proposed.  11 U.S.C. § 364(c)(1), (d).  Specifically, the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur debt (1) with priority over any and all administrative expenses as specified in sections

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

503(b) or 507(b) of the Bankruptcy Code, (2) secured by a lien on property of the estate that is not otherwise subject to a lien; and (3) secured by a junior lien on property of the estate that is subject to a lien. *See* 11 U.S.C. § 364(c)(1), (2), (3).

17.     Moreover, pursuant to Section 364(d) of the Code, the Lender may be granted a first priority senior priming lien on all of the Collateral which shall be senior to all other security interests and liens in property of the Debtors' estates in this or any subsequent or superseding cases (including, without limitation, any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto); and

18.     The Debtors submit that ample justification exists for approval of the DIP Loan as the Debtors are unable to obtain a loan on an unsecured basis or that is allowable as an administrative claim under Section 503(b)(1) of the Bankruptcy Code.  The Debtors have sought, right up to the time of the filing of these cases, unsuccessfully, such financing.  *See Declaration of Alex A. Malek.  Bray v. Shenandoah Federal Say. and Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c)); *Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.)*, 300 B.R. 861, 863 (Bankr. W.D. Pa. 2003); *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"); *see also 495 Cent. Park, Ave Corp.*, 136 B.R., 630-31 (Bankr. S.D.N.Y. 1992) (holding that debtor must make an effort to obtain credit without the requirement of a priming lien but is not required to seek credit from every possible lender); *In re Dunes Casino Hotel*, 69 B.R. 784, 796 (Bankr. D. N.J. 1986) (holding that the debtor had made required efforts under section 364(d)(1) based on

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

evidence that the debtor had attempted unsuccessfully to borrow funds on an unsecured basis or secured by junior liens, but that at least three such lenders were willing to advance funds secured by a superpriority lien); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (holding that the fact that two national banks had refused to grant unsecured loans was sufficient to support conclusion that the requirement under section 364(d)(1) was met).

19.     The second statutory requirement for obtaining postpetition credit under section 364(d)(1) is that the secured creditors whose liens are being "primed" by the DIP Lender must be provided with adequate protection of their interests in their collateral. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (*en banc*) (noting that adequate protection is required under section 364(d)(1)(B) of the Bankruptcy Code to insure that the creditor receives the value for which it bargained prebankruptcy); *Dunes Casino*, 69 B.R. at 793 (holding that "[a]dequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy").

20.     Several of the Debtors' secured creditors' liens will be primed the proposed DIP Loan (the "Primed Lenders"). *See* chart *supra.* However, the Primed Lenders are adequately protected because the sale proceeds of the Debtors' assets will be more than sufficient to satisfy both the DIP Loan and the Primed Lenders whose liens will attach to the proceeds of the sale (subject to the DIP Loan).[5]

21.     Under section 361 of the Bankruptcy Code, adequate protection may be provided by, among other things, requiring a debtor in possession to make a cash payment or payments or by providing a replacement lien to the extent that post-petition liens result in a decrease in the value of a pre-petition lender's interest in the property of the estate. Any proposal for post-

---

[5] Debtors intend to sell substantially all their assets subject to higher and better offers to a Stalking Horse for the purchase price of $1,250,000. Debtors are filing as a "first day" motion their request to approve bid procedures and for related relief and to authorize the sale in approximately 45 days of their assets.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

petition financing should "provide the pre-petition secured creditor with the same level of protection it would have it there had not been post-petition superpriority financing" *Id.*; *Swedeland*, 16 F.3d at 564. The question the Court must answer is "what facts in the record justify increasing the risk of non-performance on the existing lenders?" At least one court has stated that general question as follows: "The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized..." *See In re Aqua Associates*, 123 B.R 192, 196 (Bankr. E.D. Pa. 1991) (finding that the presence of an equity cushion is not the sole factor to be considered and stating "Therefore, we believe that, while the presence of an equity cushion should be a relevant factor, it should not be a determinative factor in any "adequate protection" analysis, and particularly one relating to § 364(d)(1)(B).")

22.      In addition to the protection from their equity cushion, the Debtors intend to provide the Primed Lenders additional and replacement liens in all property of the Debtors' estates subject only to (i) the DIP Lender's super priority priming liens, (ii) existing liens and unavoidable encumbrances that are valid, binding and enforceable and perfected liens existing in the DIP Loan on the Petition Date, and (iii) the Carve-Out. The additional and replacement liens will ensure that the Primed Lenders will retain the full benefit of subordinated liens on all available collateral to the extent such liens and encumbrances are not subsequently subordinated or set aside. *See In re Delaware & Hudson Ry, Co.*, 124 B.R., 169, 177-78 (D. Del. 1991) (priming lien under section 364(d) of the Bankruptcy Code may serve as adequate protection where, absent financing, value of collateral may be impaired); *In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 548 (Bankr. E.D. Va. 1995) (rejecting creditor's adequate protection challenge where it was granted replacement liens by debtor); *In re Craddock-Terry Shoe Corp.*, 98 B.R. 250, 256

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

(Bankr. W.D. Va. 1988) (holding that replacement liens provided adequate protection sufficient to deny motion to lift automatic stay).

23.      Additionally, the appropriate method of valuation to gauge whether a creditor is adequately protected in a reorganization case is the going concern or fair market value of the property. *In re Automatic Voting Mach. Corp.*, 26 B.R. 970, 972 (Bankr. W.D.N.Y.1983). Here, the Debtors are working toward the expedited sale of their businesses as going concerns, and thus propose, for purposes of establishing adequate protection, that the assets subject to the security interests of the Primed Lenders be valued accordingly. *See In re Beker Industries Corp.*, 58 B.R. 725, 738-39 (Bankr. S.D.N.Y. 1986) (for purposes of determining adequate protection for debenture holders, who objected to grant of superpriority status to lenders who would provide additional financing to debtor-in-possession, use of going concern value, rather than liquidation value, of debtor-in-possession's facilities was appropriate); *see also In re Pelham Enterprises, Inc.*, 376 B.R. 684, 692 (Bankr. N.D. Ill. 2007) (valuing property for purposes of section 506(a)(1) with respect to its actual use in the operation of the debtor's business as a going concern); *cf. Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997) (the proposed disposition or use of the collateral is of paramount importance to the valuation question); *GECC v. QPL Components, Inc. (In re QPL Components, Inc.)*, 20 B.R. 342, 345 (Bankr. E.D.N.Y. 1982) (the judicial test for determining where to assess collateral's value requires court to make an informed projection as to the amount recoverable upon conversion of the collateral into cash in a commercially reasonable manner, in other words, fair market value).

24.      Even if the Court were to determine that the appropriate standard for valuation for adequate protection in this case is not full fair market or going concern value, but rather some lesser amount, that amount should be a figure closer to full going concern value than liquidation

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

value. The Supreme Court has weighed in on valuation and determined that, at least for confirmation and cramdown purposes, collateral that a debtor proposes to retain and use should be valued at replacement value rather than either the foreclosure value or the average of foreclosure value and replacement values. *Id. Rash*, 520 U.S. 953 (1997) (noting that replacement value is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain property of a like age and condition from a willing seller"). Similarly, the Eleventh Circuit has evaluated valuation for purposes of adequate protection under Section 363(e) and determined that, at least for inventory, the appropriate standard is "wholesale value". *In re George Ruggiere Chrysler*, 727 F.2d. 1017 (11th Cir. 1984) (noting that wholesale value is the amount which the creditor would receive by the collateral's customary or reasonable means of disposition).

25.     Within the Section 364(d) context the courts that have not employed full fair market value or full going concern value, have employed a variety of standards, based upon the facts and circumstances of each case. *See In re Campbell Sod, Inc.*, 378 B.R. 647 (Bankr. D.Kan. 2007) (employing a "holistic" approach weighing the likelihood of collateral depreciation or appreciation, the prospects of a successful reorganization, and the existence or non-existence of equity); *In re Phoenix Steel Corp.*, 39 B.R. 218 (D.Del. 1984) (using an "interim value" – a mean between liquidation and going-concern value – an approach that appears to have been rejected by the Supreme Court in *Rash*). The Debtors operate an airline passenger service, have significant receivables (including the Cuba receivables, from a non-debtor entity generated as a result of the Debtors ongoing operations), and the existence of the DIP facility enables the Debtor to preserve the status quo until such time as a reorganization or a sale of the business as a going concern can be formulated. The "replacement value," "wholesale value," and "holistic" approaches employed

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

by the courts that do not apply the full going concern standard, all envision the court taking into account the full nature of the Debtor's business and the value of all of its assets as an operating entity.

26.    No matter how valued, the Primed Lenders have a substantial equity cushion in the Collateral sufficient to provide the requisite adequate protection.

27.    Because of the Debtors' immediate need for the liquidity provided by the DIP Loan, the Debtors, in the exercise of their sound business judgment, and in consultation with their professional advisors, has concluded that the DIP Lender is the only lender able to offer a postpetition credit facility sufficient to meet the Debtors' working capital and case funding needs on the terms, and within the time frame, required by the Debtors. Indeed, without immediate access to liquidity sufficient to sustain normal course business operations, the value of the Debtors' assets and their bankruptcy estates will be severely, if not irreparably, harmed to the extreme detriment of the Debtors' creditors, employees and estates.  Moreover, the Debtors have exercised sound business judgment in negotiating and agreeing to the proposed DIP Loan the terms of which are fair and reasonable, and are in the best interests of their estates.

28.    Bankruptcy courts routinely defer to the debtor's business judgment on most business decision, including decisions to borrow money. *See In re Snowshoe Co.*, 789 F.2d at 1088; *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Among other things, the Debtors believe that the funding to be provided pursuant to the DIP Loan (in accordance with the Budget) will be sufficient to fund all operating and case administration expenses through the conclusion of the Debtors' chapter 11 cases. The terms on which the DIP Loan is based are eminently fair and reasonable under the circumstances. The cost and expense of alternative financing (if available) would be detrimental to the Debtors' estates.

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

29.     Finally, in addition to providing the monies needed to operate until the sale of the Debtors' assets, the DIP Loan should also provide the Debtors' employees and customers the needed confidence to continue their relationships with the Debtors.

**B.     The Debtor's Use of Cash Collateral Should Be Authorized Pursuant to Section 363 of the Code.**

30.     Subject to certain conditions, a bankruptcy court may authorize the use of cash collateral by a debtor. 11 U.S.C. § 363. If a debtor does not obtain consent to use cash collateral, Section 363(c)(2) provides that a debtor must obtain court approval for the requested use of cash. *In re Sharon Steel Corp.*, 159 B.R. 165, 168 (Bankr. W.D. Pa. 1993) (noting further that "11 U.S.C. § 363(e) provides that the court shall prohibit or condition such use [of cash collateral] as is necessary to provide adequate protection of [the secured lender's] interest."). The *Sharon Steel* Court summed up the purpose of adequate protection as follows:

> The purpose of providing "adequate protection" is to insure that a secured creditor receives in value essentially what he bargained for. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987); H.R.Rep. No. 595, 95th Cong., 1st Sess. 339 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6295. The means of adequate protection provided by § 361 are not exclusive. *In re O'Connor*, 808 F.2d at 1397; *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984). Exactly what constitutes adequate protection must be decided on a case by case basis. *In re O'Connor*, 808 F.2d at 1396-97.

*Id.* at 169.

31.     Once a court makes a determination that the interests in cash collateral will be adequately protected under a debtor's proposed usage, authorization of such usage is appropriate. *In re Markim, Inc.*, 15 B.R. 56 (Bankr. E.D. Pa. 1981) (stating "[s]ince we conclude that the debtor's application proposes a method by which the creditors who have a security interest in the cash collateral will be adequately protected under the debtor's proposal, we will authorize the debtor to use the cash collateral").

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

32. In this case, the Debtors' requested use of cash collateral will not adversely impact any other party and thus no harm will result from the granting of the relief requested herein. Specifically, the Lender has consented to the Debtor's use of cash collateral consisting of the DIP Loan proceeds, account receivables and any cash on hand in accordance with the Approved Budget. As shown above, the Primed Lenders are adequately protected from any harm stemming from use of the cash collateral.

33. The Debtors bankruptcy estates will be irreparably harm if use of cash collateral is not authorized on an interim and emergency basis to fund the Debtors' operations pending the sale of the assets.

### V.    Interim Approval of Postpetition Financing and Use of Cash Collateral

34. Fed. R. Bankr. P. 4001(b), (c) and (d) provide that a final hearing on a motion to use cash collateral, obtain credit and approval of agreements concerning same may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary expedited hearing on the Motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. The Debtors are seeking such interim relief through this Motion.

35. The Debtors request that the Court conduct an expedited preliminary hearing on the Motion no later than Thursday January 28, 2016 and authorize the Debtors to obtain the financing requested herein and use the cash collateral on an interim basis until a final hearing to avoid immediate and irreparable harm to Debtors' estates.

**WHEREFORE**, the Debtors respectfully request the entry of the attached Interim Order: (i) granting this Motion, (ii) authorizing the Debtors to obtain post-petition financing pursuant to the Loan Documents on an interim basis and related limited stay relief to perfect the DIP Loan, (iii) authorizing the use of cash collateral on an interim basis, (iv) scheduling a hearing to

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

consider final approval of the financing and use of cash collateral sought herein; and (v) granting

such other and further relief as is just and proper.

Dated:  January 27, 2016                    Respectfully submitted,

                                                             /s/ Eyal Berger
                                                            Eyal Berger, Esq.
                                                            Florida Bar Number:  0011069
                                                            Email:  eyal.berger@akerman.com
                                                            AKERMAN LLP
                                                            Las Olas Centre II, Suite 1600
                                                            350 East Las Olas Boulevard
                                                            Fort Lauderdale, FL  33301-2999
                                                            Phone:  (954) 463-2700
                                                            Fax:  (954) 463-2224

                                                            Joanne Gelfand, Esq.
                                                            Florida Bar No. 515965
                                                            Joanne.Gelfand@akerman.com
                                                            AKERMAN LLP
                                                            One Southeast Third Avenue
                                                            25th Floor
                                                            Miami, Florida 33131-1714
                                                            Phone: (305) 374-5600
                                                            Fax: (305) 374-5095

                                                            *Attorneys for Worldwide Transportation Services, Inc.,*