UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                                                              Chapter 11 Cases

WORLDWIDE TRANSPORTATION SERVICES, INC.,    Case No. 16-11136-LMI
WORLDWIDE INVESTMENTS I, LLC,                              Case No. 16-11183-LMI
WORLDWIDE INVESTMENTS II, LLC                              Case No. 16-11185-LMI
WORLDWIDE INVESTMENTS III, LLC                             Case No. 16-11189-LMI

     Debtors.

_____/

**DEBTORS' EMERGENCY MOTION FOR ORDERS PURSUANT
TO 11 U.S.C. §§ 105, 363 AND 365 AND FED. R.
BANKR. P. 2002, 6004, 6006 AND 9014 APPROVING
BIDDING PROCEDURES,  ASSUMPTION AND CURE PROCEDURES
AND  SCHEDULING SALE HEARING DATE**

**This Motion will be considered on January 28, 2016 at 2:00 p.m. at the C. Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 8, Miami, FL  33128**

The Debtors submit that a hearing on this Motion is necessary on an emergency "first day" basis enabling the debtors to obtain Qualified Bids in the next 30 days and schedule an auction in the next 45 to 50 days because the Debtors will have no funds to operate after that time.  The Debtors' estates will be irreparably harmed if the assets of the operating debtor, Worldwide Transportation Services, Inc., cannot be sold as an ongoing concern together with the assets of the related debtors, prior to Worldwide being forced to close in 50 to 60 days when the Debtors project exhausting sufficient capital necessary for continued operating.

Worldwide Transportation Services, Inc. ("Worldwide"), Worldwide Investments I, LLC,  Worldwide Investments II, LLC, and Worldwide Investments III, LLC (collectively, the "Debtors"), by and through undersigned counsel and pursuant to Sections 105, 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, 6006, and 9014, seek entry of an order approving (A) bidding procedures and stalking horse bidder, (B) assumption and cure

{37255850;1}

procedures, and (C) scheduling sale hearing date ("Motion) and in support hereof respectfully states as follows:

## I. JURISDICTION

1. Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## II. BACKGROUND

2. On January 26, 2016 and January 27, 2016, the Debtors filed voluntary petitions for relief under Chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

3. The Debtors are operating their businesses and managing their affairs as debtors in possession. 11 U.S.C. §§ 1107(a) and 1108. As of the date of the filing of this Motion, no creditors' committee has been appointed in these bankruptcy cases.

4. The Debtor's operations are also discussed in the First Day Declaration of Ali A. Malek which is incorporated herein by reference.

## III. RELIEF REQUESTED AND BASIS FOR REQUEST

### A. Proposed Bidding Procedures

5. The Debtors respectfully request that the Court approve expedited bidding procedures ("Bidding Procedures") at a preliminary hearing no later than Thursday January 28, 2016 in connection with the sale of the assets described in Exhibit "A" hereto with a sale hearing pursuant to Section 363 ("Sale Hearing") to occur within 45 to 50 days enabling the debtor, Worldwide, to be sold as an ongoing concern together with the assets of the related debtors.

The key bidding procedures are as follows**:**

- **Qualified Bidder:** Any person or entity expressing an interest in purchasing the Debtors' assets (a "Potential Bidder") must provide the Debtors with an executed

confidentiality agreement in form and substance satisfactory to the Debtors and shall deliver the following Required Supporting Materials and Good Faith Deposit prior to the Bid Deadline which shall constitute its "Bid" to the Debtors and counsel as follows:

Debtors:

Worldwide Transportation Services, Inc.
Attn:  Alex Malek
14400 NW 77th Court, Suite 200
Miami, FL 33016

with a copy to:

Eyal Berger, Akerman, LLP, Attorneys for Debtors,
Akerman LLP
350 East Las Olas Blvd.
Suite 1600
Fort Lauderdale, Fl. 33301
eyal.berger@akerman.com

- **Required Supporting Materials:**

  i) **Executed APA**:  An executed asset purchase agreement in the same form and having the same terms as the APA and reflecting a minimum purchase price of $1,350,500 (the "Topping Bid"), together with a mark up or redline copy of the Potential Bidder's asset purchase agreement comparing same to the APA and reflecting any deviations from the APA.  All consideration paid to acquire the Purchased Assets shall be for cash, with no financing contingencies.  **The Potential Bidder's APA shall exclude paragraphs (insert employment agreement provisions and other unique provisions) from the APA.**

  ii) **Proof Ability to Close**:  All Potential Bidders must include as part of any bid appropriate evidence that demonstrates to the reasonable satisfaction of the Debtors that such bidder has the financial ability to consummate the transactions contemplated by their APA by the Closing Date including bank statements and financial statements.  No Potential Bidder shall be entitled to bid and deemed to a Qualified Bidder unless the Debtors determine in their reasonable discretion that the Potential Bidder is financially qualified; provided that if the Potential Bidder proposes to finance the acquisition, then evidence of an unconditional lending commitment from a recognized banking institution in the amount of the cash  portion of the purchase price of such bid or the ability to post an unconditional, irrevocable letter of credit from a recognized banking institution in the amount of the cash portion of the purchase price of such bid. **The Potential Bidder shall also provide a copy of a board resolution or similar document demonstrating the authority of the**

        **Potential Bidder to make a binding and irrevocable bid on the terms proposed.**

    iii)    **Assumption of Executory Contracts and Unexpired Leases:** To the extent that the Potential Bidder proposes to include in its bid and the APA the assumption and assignment of any of the Debtors' executory contracts or unexpired leases, a schedule shall be attached to the APA showing such contracts or leases to be assumed and assigned together with evidence of the Potential Bidder's ability to provide adequate assurance of future performance of such contracts, such as audited financial statements of the Potential Bidder, information regarding the capitalization of the Potential Bidder, information allowing the Debtors to evaluate the value of any guaranties being provided by affiliates of a Potential Bidder of its obligations under any assumed and assigned executory contracts or leases (the "Adequate Assurance Package").

    iv)    **Good Faith Deposit:** A Potential Bidder must deliver with its Bid a good faith deposit equal to 10% of the bid's proposed purchase price in the form of a wire transfer or certified or cashier's check (the "Good Faith Deposit") payable to the trust account for the attorneys for the Debtors.

**A Potential Bidder satisfying the above requirements shall be deemed to be a Qualified Bidder and to have submitted a "Qualified Bid".**

**THE BID DEADLINE SHALL BE _____ AT 5:00 P.M. EST.**

**Auction.** An auction (the "Auction") of the Assets shall be conducted by the Debtors in the event there is at least one Qualified Bidder. The Auction shall take place at _____(EST) on _____ at the law offices of Akerman LLP, 350 East Las Olas Blvd., Suite 1600, Fort Lauderdale, Florida 33301.

**ONLY A QUALIFIED BIDDER WHO HAS SUBMITTED A QUALIFIED BID WILL BE ELIGIBLE TO PARTICIPATE AT THE AUCTION.**

**The Qualified Bidder is not entitled to any break-up fee, termination fee or similar type of payment or reimbursement.**

**Bidding Increment.** The minimum bidding increment at the auction shall be $100,000 or such other amount as the Debtors determine is appropriate. The Debtors reserve the right to change the bidding increments at the Auction.

**Baseline Bid / Overbid Protection.** In the event there are one or more Qualified Bidders and an Auction is held, the Baseline Bid will be the sum of the Qualified Bid which proposes the highest and best economic consideration to the Debtors in the Debtors' sole business judgment.

**Acceptance of Qualified Bid.** The Debtors presently intend to consummate the sale with the Stalking Horse Bidder if there is no Auction. Otherwise, if an Auction is held the Debtors shall determine who has made the highest and best offer (the "Successful

{37255850;1}        4

Bidder") and the Debtor is authorized to accept Back-Up bids. However, the Debtors' presentation to the Bankruptcy Court for approval of the bid made by the Successful Bidder does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted such Bid only when such bid has been approved by order of the Bankruptcy Court.

**Reservation of Rights.** At the conclusion of the Auction the Debtors shall determine which bid, if any, is the highest or otherwise best offer, and (i) may reject at any time, any bid that the Debtors determine in their sole discretion to be: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the sale transaction, or (c) contrary to the best interests of the Debtors, their estates and creditors.

**Return of Deposits**. The Good Faith Deposit of a Qualified Bidder shall be returned within three business days of the earlier of (a) the closing of a sale transaction on all or a portion of the Assets on which the Qualified Bidder made a bid or (b) 30 days after the Sale Hearing.

**Credit Bidding.** The Stalking Horse (defined below) may credit bid at the sale in an amount up to amount owed the Stalking Horse under its DIP Loan with the Debtors plus the amount outstanding on its first priority prepetition loan to the Debtors. Other creditors may credit bid as permitted under the Code, however credit bids of junior lienors will need to include cash bids to satisfy the any senior liens.

**Stalking Horse Bidder, Break Up Fee:**

6. Subject to Court approval, the Debtors have entered into an asset purchase agreement (the "APA") dated as of January 27, 2016 between the Debtors as sellers and MTG Florida LLC as buyer (the "Stalking Horse" or "Stalking Horse Bidder"), providing for the Debtors to sell and the Stalking Horse to purchase the assets listed on Exhibit A (the "Purchased Assets") for a combined credit bid and cash purchase price of $1,250,000. Pursuant to the APA the Stalking Horse may designate one or more the vehicles listed on Exhibit A hereto for inclusion in the Purchased Assets (the "Designated Vehicles") which Designated Vehicles shall be deemed to be part of the Purchased Assets. The APA has no financial contingencies. A true and correct copy of the APA is attached hereto and incorporated herein as Exhibit "B". The APA includes a break up fee in the amount of $35,700.

7. Approval of breakup fees, expense reimbursements and other forms of bidding protection in connection with the sale of significant assets pursuant to Section 363 of the Bankruptcy Code has become an established practice in Chapter 11 cases. Three different approaches are used by the bankruptcy courts in assessing the validity and enforceability of bidding incentives. The first approach – the business judgment test – is based on the corporate control cases and applies the business judgment rule to make certain that bidding is promoted, not deterred and that the fees are reasonable in relationship to the size of the transaction and the bidder's efforts. *See In re Twenver, Inc.*, 149 B.R. 954, 956 (Bankr. D. Col. 1992); *In re Integrated Resources, Inc.*, 135 B.R. 746, 753 (Bankr. S.D.N.Y. 1992), aff'd, 147 B.R. 650 S.D.N.Y. 1992), appeal dismissed, 3 F. 3d 49 (2d Cir. 1993); *In re 995 Fifth Avenue Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *see also Cottle v. Stores Communications, Inc.*, 849 F. 2d 570 (11th Cir. 1988) (using business judgment test in corporate control context). This approach also has been endorsed by a leading bankruptcy treatise. *See* 3 Collier on Bankruptcy § 363.02[6] at 363-21 (15th ed. 2005) (courts "should approve [bidding incentives] unless they are unreasonable or appear more likely to chill the bidding process than to enhance it.").

8. The second approach – the best interests of the estate test – focuses on whether the bidding incentive at issue is in the best interests of the estate to ensure that the debtor's estate is not unduly burdened and that the relative rights of the parties are protected. *See In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994); *see also In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr. N.D. Ill. 1995.

9. The third approach – the administrative claim test – considers whether the bidding incentive at issue is "actually necessary to preserve the value of the estate." *See In re O'Brien Environmental Energy, Inc.*, 181 F. 3d 527, 535 (3d Cir. 1999), *see also AgriProcessors, Inc.. v.*

*Iowa Quality Beef Supply Network, L.L.C.* (*In re Tama Beef Packing, Inc.*), 290 B.R. 90, 97-98 (B.A.P. 8th 2003); *In re Dorado Marine, Inc.*, 332 B.R. 637 (M.D. Fla. 2005).

10. The Debtors submit that under each of the above tests the proposed Breakup Fee and Expense Reimbursement will not chill bidding but enhance it and that the proposed Breakup Fee and Expense Reimbursement will preserve and enhance the value of the estates' assets.

11. The Bidding Procedures are intended to provide a flexible process allowing the Debtors to maximize the value of their assets given the severe liquidity constraints they currently face. The Debtors expressly reserve the right to modify the relief requested in this Motion prior to or at the applicable hearings, including modifying the proposed Bidding Procedures. Moreover, the Debtors reserve the right to adjourn the Auction or the Sale Hearing or remove any assets from the sale if the Debtors determine that such action will maximize value to their estates.

   **B.**  **The Employment Agreement with Debtors' Principal, Malek.**

The APA provides for an Employment Agreement for Worldwide's President and the other related debtors sole member, Alex Malek. Mr. Malek is also the owner or indirect owner of all the related Debtors. A copy of the Employment Agreement is attached to the APA as Exhibit "C".

   **C.**  **Proposed Shortened Notice of the Sale Hearing**

Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide their creditors with 21 days' notice of the hearing on this Motion seeking approval of the sale of the Purchased Assets. The notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested. However, pursuant to Federal Rule of Bankruptcy Procedure 9006(c), the Court has the authority to limit that notice period based on cause shown. Because of the exigent circumstances facing the Debtors, the Debtors

submit that cause exists for the shortened notice period requested herein and thus are seeking to have the Court approve the relief sought herein on the limited notice requested. In any event, parties with standing will have an opportunity to object at the final sale hearing (the "Sale Hearing").

The Debtors have served, or will serve, this Motion on: (a) the Office of the United States Trustee; (b) respective counsel to any lender; (c) those creditors holding the 20 largest unsecured claims against the Debtors' estate; (d) all parties known to be asserting a lien in the Debtors' assets; (e) all counterparties to executory contracts and unexpired leases potentially to be assumed and assigned; (f) all state attorney generals in states where the Debtors conduct business; and (g) various federal and state tax authorities, including the Internal Revenue Service; and, (h) counsel to any Committee which may be formed.

The Debtors also will serve by regular mail, email and facsimile on the foregoing persons a notice of the Auction and the Sale Hearing (the "Auction and Hearing Notice"), which includes, among other things, the date, time and place of the Auction and the Sale Hearing and information for how to learn about the deadline for filing any objections to the relief requested herein once they are set by the Court, and, therefore, complies with Bankruptcy Rule 2002(c). The Auction and Hearing Notice will be served on all creditors of the Debtors prior to final sale hearing on this Motion.

The Debtors submit that the methods of notice described in this Motion comply fully with Bankruptcy Rule 2002 in terms of the form of notice required and submit that the exigencies presented by the facts and circumstances of the case necessitate and therefore justify the limited notice period for the proposed Bidding Procedures for the sale of the Purchased Assets. Therefore, the Debtors respectfully request that this Court approve the notice procedures proposed above.

## IV. SALE OF THE DEBTORS' ASSETS IS WARRANTED PURSUANT TO SECTION 363 OF THE CODE.

12. The Bankruptcy Code provides that a debtor in possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing. *See* 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor. *See Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action.").

13. Courts typically consider four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether adequate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith. *See*, e.g., *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

14. Here, each of these four factors has been satisfied. First, sound business reasons exist for the Debtors' efforts to sell their assets. The Debtors currently have inadequate liquidity to continue operating for an extended period. A rapid, but orderly sale of the Assets will minimize the liquidity the Debtors need to continue operations while providing a way for the

Debtors to monetize their assets for the benefit of their creditors. Second, as discussed above, the Debtors will be providing adequate and reasonable notice to interested parties of the opportunity to bid on the Purchased Assets and of the opportunity to object to the sale of those assets. *See*, *e.g.*, *Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"). Third, the proposed Bidding Procedures provide for an open and competitive bidding process for the Purchased Assets. Fourth, the Debtors are proceeding in good faith and will make a showing at the Sale Hearing that the purchaser or purchasers of the Purchased Assets have acted in good faith. Accordingly, the Auction and sale of the Purchased Assets pursuant to the proposed Bidding Procedures should be approved.

### V. SALE OF ASSETS FREE AND CLEAR OF CERTAIN LIENS, CLAIMS AND ENCUMBRANCES.

15. Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code Section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). *See In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows purchasers ... to acquire assets [from a debtor] without any accompanying liabilities"); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3

(Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

16. To facilitate the sale of the Purchased Assets, the Debtors request that the Court authorize their sale free and clear of liens, claims, encumbrances, and other interests (collectively, "Liens") at the Sale Hearing to be scheduled in 45 to 50 days and immediately after the proposed Auction Date for the purpose of hearing, pursuant to Section 363 of the Code, the Debtors request to sell its Purchased Assets free and clear of liens. The sale of the Purchased Assets pursuant to the Bidding Procedures will have satisfied at least one of the prongs of Section 363(f).

17. The Debtors believe that Section 363(f)(5) is satisfied because (i) any entity holding a lien on the Purchased Assets could be compelled to accept a monetary satisfaction of its liens, and (ii) the Debtors propose that any lien on the Purchased Assets sold shall attach to the net proceeds of the sale of the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto. As such, the sale of the Purchased Assets free and clear of all liens satisfies Section 363(f)(5) of the Bankruptcy Code.

18. In addition, the Debtors submit that is assets may be sold free and clear of all successor liability claims. Notwithstanding reference to the conveyance free and clear of "any interest" in Section 363(f) of the Bankruptcy Code, that section has been interpreted to allow the sale of a debtor's assets free and clear of successor liability claims as well. *See*, e.g., *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) of the Bankruptcy Code barred successor liability claims for employment discrimination and rights under travel voucher program); *Am. Living Systems v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986), aff'd, 805 F.2d 1515 (11th Cir. 1986) (sale pursuant to section 363(1) barred successor liability for products defect claim).

## VI    THE COURT SHOULD WAIVE OR REDUCE THE PERIODS REQUIRED BY RULES 6004(H) AND 6006(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

19.    Pursuant to Rule 6004(h) (formerly Rule 6004(g)) of the Bankruptcy Rules), all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for 14 days after entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).

20.    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately if there is a showing of a sufficient need to close the sale within the 14-day period. 10 Collier on Bankruptcy § 6004.10 (15th ed. 2007).

21.    In light of the Debtors' severe liquidity restraints and to limit the costs of administering the Debtors' estates, it is critical that the Debtors close the sale of the Assets as soon as possible.

22.    Accordingly, the Debtors hereby request that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## VII    ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Assumption And Assignment of Unexpired Leases and Executory Contracts.**

23. The assumption and assignment of the Debtors' executory contracts and unexpired leases is an integral part of the proposed sale and should be approved by the Court. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). By enacting section 365(a) of the Bankruptcy Code, Congress intended to allow a debtor to assume those leases/contracts that benefit the estate, and to reject those that are of no value or are burdensome to the estate. *See Cinicloa v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *Leland v. Gardinier, Inc.* (*In re Gardinier, Inc.*), 831 F.2d 974, 976 n.2 (11th Cir. 1987); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983); *Chira v. Saal (In re Chira)*, 367 B.R. 888, 898 (S.D. Fla. 2007); *In re Sandman Assocs., LLC*, 251 B.R. 473, 481 (W.D. Va. 2000) (noting that "[t]he authority granted by section 365 allows the trustee or debtor in possession to pick and choose among contracts, assuming those that are favorable and rejecting those that are not").

24. It is well established that decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor. *See Gardinier, Inc.*, 831 F.2d at 976 n.2; *Chira*, 367 B.R. at 898; *In re G. Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (noting that "[i]n determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test. Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered") (citations omitted); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Sharon Steel Corp. v. National Fuel Gas Dist. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989). Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or

whim or caprice." *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

25. Adequate business justification exists to merit judicial approval of the proposed assumption and assignment of the Debtors' executory contracts and unexpired leases. The Debtors' contracts and leases are valuable assets of the Debtors' estates and represent an integral part of any proposed transaction for the sale of the Offered Assets. To the extent that the Debtors can sell them as part of the sale, the sales will generate cash which the estates can use to satisfy claims and reduce potential claims against the estates.

26. Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign an executory contract if the Debtor:

> (A) cures, or provides adequate assurance that [it] will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an expired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease. . . . (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if — (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

*See* 11 U.S.C. §§ 365(a), (b)(1), (f)(2).

27. Accordingly, section 365 of the Bankruptcy Code authorizes the proposed assumptions and assignments of executory contracts and unexpired leases, provided that the defaults under such contracts are cured and adequate assurance of future performance is provided.

28. It is well settled that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but that a contract counterparty is not required to receive an absolute guarantee of future performance. *See, e.g.*, *In re Glycogensys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same). As set forth above, any bid that is conditioned upon the assumption and assignment of executory contracts and unexpired leases must (a) be submitted with Adequate Assurance Packages containing the identity of such contracts and leases and provide evidence of such bidder's ability to provide adequate assurance of future performance.

29. The Debtors will provide all parties to executory contracts and unexpired leases to be assumed and assigned pursuant to the Motion with such Adequate Assurance Packages and an opportunity to be heard, and in connection with the Sale Hearing, the Debtors will provide evidence that all requirements for the assumption and assignment of the executory contracts and unexpired leases proposed to be assigned to the purchaser(s) of the assets will be satisfied. Thus, the Debtors respectfully submit that, by the conclusion of the Sale Hearing, assumption and assignment of the executory contracts and unexpired leases should be approved.

### B. Procedures Regarding Cure Amounts.

30. To facilitate the sale and the assumption and assignment of the Debtors' executory contracts and unexpired leases, the Debtors propose to serve a notice of assumption and assignment and of the proposed cure amounts relating to such assumed agreements ("Assumed Agreements") no later than seven (7) days after the entry of an Order approving this Motion and request that the Court approve the following procedure for fixing any cure amounts owed on all Assumed Agreements.

31. The Debtors will attach to the Assumption Notice their calculation of the undisputed cure amounts that the Debtors believe must be paid to cure all prepetition defaults under all Assumed Agreements (the "Prepetition Cure Amount"). The Debtors request that if a non-debtor party to any Assumed Agreements disputes the Prepetition Cure Amount or objects to the assumption and/or assignment of an Assumed Agreements that such party be required to file an objection (the "Cure Amount Objection") on or before 4:00 p.m. (prevailing Eastern Time) three (3) days prior to the Sale Hearing (the "Cure Objection Deadline") and serve a copy of the Cure Amount Objection so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon (i) the Debtors, c/o Ali Malek 14400 NW 77 CT, Suite 200, Miami Lakes, FL 33016; (ii) attorneys for the Debtors, Eyal Berger, Esq., Akerman LLP, 350 East Las Olas Blvd., Suite 1000, Fort Lauderdale, Florida 33301.

32. In the event any such party fails to timely file and serve a Cure Amount Objection by the Cure Objection Deadline, such party shall (i) be forever barred from objecting to the Prepetition Cure Amount and from asserting any additional cure or other amounts with respect to such Assumed Contracts and Assumed Leases and the Debtors shall be entitled to rely solely upon the Prepetition Cure Amount; and (ii) be deemed to have consented to the assumption and assignment of such Assumed Agreements and shall be forever barred and estopped from

asserting or claiming against the Debtors, the Successful Bidder or any other assignee of the relevant Assumed Agreements that any additional amounts are due or defaults exist, or conditions to assumption and assignment must be satisfied under such Assumed Agreements.

33. In the event that a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Prepetition Cure Amount. After receipt of the Cure Amount Objection, the Debtors will attempt to reconcile any differences in the Prepetition Cure Amount believed by the non-debtor party to exist. In the event, however, that the Debtors and the non-debtor party are unable to consensually resolve the Cure Amount Objection, the Debtors will segregate any disputed Prepetition Cure Amount pending the resolution of any such disputes by this Court or mutual agreement of the parties.

34. Based on the foregoing, the Debtors respectfully request that the Bankruptcy Court approve the assumption and assignment of the Assumed Agreements.

**VIII    NOTICE**

35. On an expedited basis, notice of this Motion has been given to (a) the Office of the United States Trustee, (b) all other parties known to be asserting a lien in the Debtors' assets, (c) the 20 largest unsecured creditors of the Debtors, (d) all counterparties to executory contracts and leases that may be assumed and assigned, (e) all state attorney generals in states where the Debtors conduct business, (f) various federal and state tax authorities, including the Internal Revenue Service.

36. Based on the exigent circumstances described above, the Debtors respectfully submit that such notice is sufficient and request that this Court find that no further notice of the relief requested herein is required.

37. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

For all the foregoing reasons, the Debtors respectfully request the Court enter an order (A) approving the bidding procedures and stalking horse bidder, (B) approving the assumption and cure procedures, (C) scheduling sale hearing date; (D) granting the remaining relief requested in this Motion in all respects, and (E) granting such other and further relief as is just and proper.

Dated: January 27, 2016                                        Respectfully submitted,

s/Eyal Berger
Eyal Berger, Esq.
Florida Bar Number: 0011069
Email: eyal.berger@akerman.com
350 E. Las Olas Blvd. Suite 1600
Ft. Lauderdale, FL 33301
Joanne Gelfand, Esq.
Florida Bar No. 515965
Email: joanne.gelfand@akerman.com
**AKERMAN LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095

*Attorneys for Worldwide Transportation Services, Inc.,*