

**ORDERED in the Southern District of Florida on January 29, 2016.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| WORLDWIDE TRANSPORTATION SERVICES, INC., | Case No. 16-11136 |
| WORLDWIDE INVESTMENTS I, LLC, | Case No. 16-11183 |
| WORLDWIDE INVESTMENTS II, LLC | Case No. 16-11185 |
| WORLDWIDE INVESTMENTS III, LLC | Case No. 16-11189 |
| Debtors. | |
| _____/ | |

**INTERIM ORDER (I) AUTHORIZING (A) SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361 AND 364(c); (B) USE OF CASH COLLATERAL AND (II) CONTINUING PRELIMINARY HEARING (ECF No. 9) AND SETTING CONTINUED PRELIMINARY HEARING**

This matter came on to be heard on January 28, 2016 at 2:00 p.m. (the "Preliminary Hearing"), upon the debtors, Worldwide Transportation Services, Inc. ("Worldwide"),

{37322485;1}

Worldwide Investments I, LLC ("WWI"), Worldwide Investments II, LLC "(WWII"), and Worldwide Investments III, LLC ("WWIII) (WWI, WWII, and WWIII are collectively referred to as the **"Affiliate Debtors"** and together with Worldwide the **"Debtors")**, Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Secured Credit And Use Cash Collateral, (II) Granting Limited Stay Relief For The Lender To Perfect Postpetition Loan And (III) Scheduling Final Hearings (the "**Motion**") (ECF No.9), and the Court having reviewed and taken judicial notice of the file, heard argument of counsel, due and sufficient notice of the Motion having been provided, good and sufficient cause appearing and for the reasons stated on the record at the Preliminary Hearing, the Court makes the following

FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR ENTRY OF THIS INTERIM ORDER ONLY:

A.   Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B.   On January 26 and 27 the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

C.   The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

D.   This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. Section 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. Section 157(b)(2).

E.   On January 27, 2016, the Debtors and MTG Florida LLC (the "Lender") entered into that certain Senior Secured Debtor-In-Possession Credit Agreement (the "Loan

Documents") attached as **Exhibit "B"** to the Motion. The Lender also lent funds to the Debtors pre-petition secured by a claimed first priority lien in all the assets of the Affiliate Debtors.

F.    The Debtors are unable to operate solely with use of cash collateral.

G.    The Debtors' w-2 payroll employees and its drivers whom the Debtors assert are independent contractors are owed pre-petition wages which total $160,289.20 *excluding* wages for the Debtors' CEO and President, Alex Malek (the "Wage Obligations"), as more fully described on Exhibit "A" to the Emergency Motion for Authority the Payment of Prepetition Wages (ECF No. 15) (the **"Wage Motion"**).

H.    The Debtors assert that they are unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense in an amount necessary to fund Wage Obligations and that financing on a postpetition basis is not otherwise available to pay the Wage Obligations without the Debtors granting, pursuant to Bankruptcy Code Section 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and the granting of a senior priming lien pursuant to Bankruptcy Code Section 364(d).

I.    Notice of the Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the 20 largest unsecured claims against each of the Debtors; and (iii) the Primed Lenders which comprise the known holders of pre-petition liens against the Debtors' property. No official committee of unsecured creditors (the "Committee") has as yet been appointed in the Chapter 11 Cases.

J.    The DIP Loan has been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be deemed to have been extended, issued or made, as the case may be, in

good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

K.  Based on the record before this Court, it appears that the terms of this Interim Order, including, without limitation, the terms of the DIP Loan and use of Cash Collateral, are fair and reasonable, reflect the Debtors' exercise of sound and prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.  The Debtors have requested immediate entry of this Interim Order so that the DIP Lender will advance the amount of $330,000 immediately, enabling the Debtors to pay the Wage Obligations.

M.  The partial relief granted herein to use Cash Collateral and obtain the DIP Loan is necessary to avoid immediate and irreparable harm to the Debtors' estates. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the operating debtor, Worldwide, to continue servicing its contracts and providing services to its clients without interruption.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED ON AN INTERIM BASIS:**

1.  <u>Motion Granted In Part</u>. The Motion is granted in part. The relief not granted herein will be considered at the Continued Preliminary Hearing (defined below).

2.  <u>Authorization For Interim DIP Loan and Permission to Use Cash Collateral</u>. The Debtors are expressly authorized and empowered to (i) obtain credit pursuant to the Loan Documents on an interim basis in an amount not to exceed $160,289.20 (the "Interim DIP

Loan") for the purpose of paying the Wage Obligations, and (ii) based on the consent of the Lender to use the proceeds of the Interim DIP loan constituting cash collateral for the payment of the Wage Obligations.

3. The Debtors shall use their best efforts to negotiate with the employees and drivers listed on Exhibit "A" to the Wage Motion to obtain a reduction from the employees and drivers of the amount of their wages to be paid prior to the Continued Preliminary Hearing (defined below) without causing any interruption in the Debtors' operations. The Debtors may enter into such other agreements, instruments and documents as may be necessary or required or requested by DIP Lender in its sole discretion to evidence the Interim DIP Loan and to consummate the terms and provisions contemplated by the Loan Documents and this Interim Order and to evidence perfection of the liens and security interests to be given to DIP Lender hereunder. The Debtors and Lender may enter into any nonmaterial amendments of or modification to the Loan Documents without the need of further notice and hearing or order of this Court.

4. The DIP Indebtedness. The Interim DIP Loan and all other indebtedness and obligations incurred by the Debtors on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Interim Order and the Interim DIP Loan which may now or from time to time hereafter be owing by the Debtors to Lender (including principal, accrued and unpaid interest, fees, costs and expenses, including without limitation reasonable attorneys' fees and expenses, and any other amounts owed under this Order or the Loan Documents) are referred to herein as the "DIP Indebtedness".

5. Interest, Fees, Costs and Expenses. The DIP Indebtedness shall bear interest at the applicable rates (including default and non-default interest rates) as set forth in bold in the

Motion and in the Loan Documents. Notwithstanding the foregoing, nothing in this Interim Order shall be construed to limit or otherwise impair the joint and several liability of the Debtors for all of the DIP Indebtedness under the Loan Documents.

6. <u>Termination of the DIP Loan and Use of Cash Collateral</u>. Lender's obligation to provide the Interim DIP Loan and Lender's consent to the use of the cash collateral shall immediately and automatically terminate (except as Lender may otherwise agree in writing in its sole discretion), and all DIP Indebtedness shall be immediately due and payable in cash upon the earlier of (i) the date of completion of a Section 363 Sale of substantially all of the Debtors' assets, or (ii) April 26, 2016. In the event of a default under the Loan Documents the Lender may declare the DIP Indebtedness immediately due and owing.

7. <u>Security for DIP Loan.</u> As security for the DIP Indebtedness, the Lender is granted a lien (the "Interim DIP Lien") against the assets of the Affiliate Debtors set forth on Schedule 1 hereto, subject only to the Pre-petition Lien of the Lender in these assets together with the proceeds, products, rents and profits of the pledged assets (the "Collateral").

8. <u>Perfection of Interim DIP Lien</u>. The Interim DIP Lien shall be, and is hereby deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided, however,</u> that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the (i) Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests,

mortgages and other similar documents as Lender may require, and (ii) Lender may require the Debtors to deliver to Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith. If Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Lender, in accordance with the Loan Documents or this Interim Order, elects to take possession of any Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. The Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property.

9.  **Books and Records**. The Debtors shall permit Lender and any authorized representatives designated by Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Debtors, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss any Debtor's affairs, finances and business with such Debtors' officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Without limiting the generality of the foregoing, the Debtors shall promptly provide to Lender any information or data reasonably requested to

monitor the Debtors' compliance with the covenants and the provisions of the Loan Documents and this Order.

10. <u>Effect of Dismissal, Conversion or Substantive Consolidation</u>. If any Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, Lender's rights and remedies under this Order and the Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

11. <u>Order Binding on Successors</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender and the Debtors and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' estate or of any estate in any successor cases). No third parties are intended to be or shall be deemed to be third party beneficiaries of this Interim Order or the Loan Documents.

12. <u>No Liability to Third Parties</u>. Lender shall not (i) have liability to any third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, its creditors or its estate, and (ii) Lender's relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

13. <u>Order Binding Upon Parties in Interest</u>. All of the provisions of this Interim Order shall be final and binding on the Debtors (including, without limitation, their successors and assigns), the Debtors' shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed.

14. <u>Effect of Modification of Interim Order</u>. The Debtors shall not, without Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Interim Order or any Loan Documents. If any of the provisions of this Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without Lender's prior written consent, such stay, modification or <u>vacatur</u> shall not affect the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations. Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Interim Order, and Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.

15. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

16. <u>Continued Preliminary Hearing</u>. The Preliminary Hearing is continued to February 3, 2016 at 10:00 a.m. (the "Continued Preliminary Hearing") (ECF No. 27). This Interim Order is without prejudice to the Debtors seeking the complete relief requested in the Motion, including without limitation, authorization to obtain additional credit for a total extension of credit to the Debtors from the Lender of up to $330,000, the granting to Lender of an administrative expense with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code in the amount of the Interim DIP Loan and any additional credit authorized at the Continued Preliminary Hearing ("Additional Interim DIP Loan") and the granting of a senior priming lien on all the Debtors' assets as security for the Interim DIP Loan and any Additional DIP Loan.

17. The Debtors shall promptly serve a copy of this Order, by regular mail upon (i) the lenders defined as the Primed Lenders in the Motion; (ii) the creditors holding the 20 largest unsecured claims of each of the Debtors, or the Committee, if appointed; and (iii) any other party which theretofore has filed in the Chapter 11 Cases a request for special notice with this Court and served such request upon Debtors' counsel.

18. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Interim Order have been withdrawn or are hereby overruled.

19. <u>Controlling Effect of Order</u>. To the extent any provisions in this Interim Order conflict with any provisions of the Motion, or any Loan Document the provisions of this Interim Order shall control.

20. <u>Order Effective</u>. This Interim Order shall be effective *nunc pro tunc* to January 28, 2016 at 3:30 p.m.

### #

Submitted by:

{37322485;1}                                                    10

Joanne Gelfand
Eyal Berger
Akerman, LLP.
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
eyal.berger@akerman.com
joanne.gelfand@akerman.com

<u>Copy furnished to:</u>
Eyal Berger, Esq.
*(Attorney Berger is directed to serve a conformed copy of this Order and to file a Certificate of Service with the Court).*

{37322485;1}                                11

SCHEDULE 1

(i) all for-hire licenses, including, but not limited to, those issued by Miami-Dade County and listed on Schedule I attached hereto and by Broward County and all rights, privileges and economic benefit associated therewith (collectively, the "Licenses");
(ii) all funds, money, accounts, financial assets, payment obligations and general intangibles, if any, generated from or arising out of the sale, assignment, transfer or other disposition of any Licenses or otherwise;
(iii) all accounts, general intangibles (including all payment intangibles), royalties, money, deposit accounts, and any other contract rights or rights to the payment of money, documents (including, if applicable, electronic documents), instruments, financial assets, investment property and other personal property of every kind and nature at any time constituting, evidencing, or arising under or with respect to the Licenses, and all other general intangibles; and
(iv) all proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits, income, benefits and products of, each of the foregoing, and any insurance proceeds, indemnity, warranty or guaranty payable to any Pledgor from time to time, and causes of action or claims, with respect to any of the foregoing.

All terms used herein that are defined in the Uniform Commercial Code as in effect from time to time in the State of Florida (the "UCC") shall have the meanings assigned to them in the UCC.

{37322485;1}                                12

SCHEDULE 1A
to
Pledge and Security Agreement

LIST OF PLEDGED LICENSES

| License # | DBA Name | Account ID | Address | City | St | Lic Status |
|---|---|---|---|---|---|---|
| 10301.TMP-PB | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60007.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60026.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60043.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60044.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60064.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locks | FL | Active |
| 60079.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60092.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60101.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60103.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60105.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60135.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locks | FL | Active |
| 60159.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60160.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60163.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60167.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60175.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60176.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60179.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60180.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locks | FL | Active |
| 60356.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locks | FL | Active |
| 60388.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60389.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |

| License # | DBA Name | Account ID | Address | City | St | Lic Status |
|---|---|---|---|---|---|---|
| 60391.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60397.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60404.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60420.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60426.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60439.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60444.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60466.LU | Worldwide investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60489.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60490.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60502.LU | Worldwide Investments II, LLC | 250060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60526.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 60530.LU | Worldwide Investments II, LLC | 25D060 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 60532.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 61018.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 61022.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa. Locka | FL | Active |
| 61024.LU | Worldwide Investment I, LLC | 250056 | 15001 NW 42nd Ave | Opa Locka | FL | Active |
| 61042.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 61051.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 61062.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 61063.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 61064.LU | Worldwide Investment III, LLC | 250058 | 15001 NW 42nd Ave #47 | Opa Locka | FL | Active |
| 30148.PM | World Wide Limousine, Inc. | 121571 | 19006 SW 76th Ave | Cutler Bay | FL | Active |