ORDERED in the Southern District of Florida on February 9, 2016



Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                              Chapter 11 Case

WORLDWIDE TRANSPORTATION                            Case No. 16-11136-LMI
SERVICES, INC.[1]                                   (Jointly Administered)

    Debtors,
_____/

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ORDERS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014 APPROVING BIDDING PROCEDURES, FORM AND MANNER OF SALE NOTICES, AND SCHEDULING SALE HEARING DATE (ECF No. 13)**

**IMPORTANT NOTICE:  THE COURT HAS SCHEDULED THE FINAL HEARING ON THE SALE OF THE DEBTORS' ASSETS TO THE STALKING HORSE, MTG FLORIDA LLC ON FEBRUARY 26, 2016 at 11:00 a.m.**

This matter came on to be heard at the continued hearing on February 3, 2016 at 10:00 a.m. (the "Hearing"), upon the debtors, Worldwide Transportation Services, Inc. ("Worldwide"),

---

[1] The address of each of the Debtors is 14400 NW 77 Court, Suite 200, Miami Lakes, Florida 33016; and the last four digits of the taxpayer identification of each of the Debtors follows in parenthesis: (i) Worldwide Transportation Services, Inc. (7317) Case No. 16-11136-LMI; (ii) Worldwide Investments I, LLC (1461) Case No. 16-11183-LMI; (iii) Worldwide Investments II, LLC (1462) Case No. 16-11185-LMI; and (ix) Worldwide Investments III, LLC (1478) Case No. 16-11189-LMI.

{37487871;3}

Worldwide Investments I, LLC, Worldwide Investments II, LLC, and Worldwide Investments III, LLC (collectively, the "Debtors"), emergency motion seeking entry of an order approving (A) bidding procedures and stalking horse bidder, (B) form and manner of sale notices, and (C) sale hearing date (the "Motion") (ECF No. 13), and the Court having reviewed and taken judicial notice of the Debtors' schedules filed herein, heard argument of counsel, due and sufficient notice of the Motion having been provided, good and sufficient cause appearing and based on the evidence and for the reasons stated on the record at the Continued Preliminary Hearing, the Court makes the following

### FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.  Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion.

B.  On January 26 and 27, 2016, the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

C.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

D.  On January 27, 2016, the Debtors and the Lender entered into that certain Asset Purchase Agreement (the "Loan Documents") attached as Exhibit "B" to the Motion. (ECF No. 13-2).

E.  The Debtors facing severe liquidity restraints and will be unable to continue operating after sixty days.

F. The operating entity for the related debtor, Worldwide, provides ground transportation services for corporate events, roadshows, private aviation, airport transfers, sightseeing tours, sporting events, and other customized trips throughout South Florida, Atlanta, Chicago, Washington D.C., Los Angeles, and San Francisco. Worldwide utilizes a fleet of 71 corporate sedans, executive limousines and vans and maintains its corporate headquarters in Miami, Florida. Worldwide together with its predecessor-in-interest has operated its business since 2001. The other related debtors, Worldwide Investments I, LLC, Worldwide Investments II, LLC, and Worldwide Investments III, LLC are holding companies that collectively own forty-four of the For-Hire Limousine Service Licenses used in the operation of the debtor, Worldwide.

G. The debtor, Worldwide, has 20 employees and approximately 40 drivers who are independent contractors.

H. These Chapter 11 filings were precipitated by dozens of Worldwide's drivers suing Worldwide and its principal pursuant to the federal Fair Labor Standards Act alleging that they were improperly classified as independent contractors instead of employees and seeking damages for back pay, benefits and attorney's fees and costs. Worldwide also suffered operating losses because of the "unfair" competition of the ride sharing companies permitted to operate in Miami and Broward counties without incurring the same regulatory expenses and other requirements that Worldwide must endure.

I. The Debtors intend to seek approval of the sale of substantially all their assets to the Stalking Horse or the Successful Bidder if an auction is held. Worldwide must be sold as a going concern to realize and maximize its value together with the assets of the related debtor holding companies. To avoid irreparable harm to the Debtors' estates, the sale of the assets must close in the next 45 to 50 days. A list of the assets the Debtors intend to sell excluding any

vehicles designated for purchase by the Stalking Horse or a Potential Bidder are set forth on **Exhibit "A"** hereto.

J. If the sale does not close in that timeframe the Debtors will be out of cash and forced to cease operations which will preclude any sale of the debtor Worldwide's assets as a going concern together with the assets of the Related Debtors.

K. The APA has been negotiated at arm's length between the Debtors and the Stalking Horse; the Court recognizes the Stalking Horse also provided debtor-in-possession financing to the Debtors pursuant to Order of this Court. (ECF No. 13)

L. The Debtors exercised sound business judgment in negotiating the APA.

M. The Break Up Fee is a reasonable expense cap and will enhance bidding enabling the Debtors to maximize their value.

N. The Bidding Procedures are necessary to the efficient sale of the Debtors' assets and to maximize their value.

O. Based upon the foregoing findings and conclusions, and upon the record made before this Court at the hearing, good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED** that:

1. Motion Granted. The Motion is granted in part and continued in part.

2. Sale Notice. The Sale Notice shall include information concerning the sale process including the following:

i) Description of goods to be sold;

ii) availability of APA in word format for use in submitting a Bid;

iii) instructions on how to access a "Data Room" to be set up by the Debtors and include the following information: The Debtors' schedules and statement of financial affairs,

schedule of executory contracts and unexpired leases, financial information concerning the Debtors including financial statements, operating reports and customer lists;

    iv) list of the vehicles the potential bidders may designate for purchase; and

    v) the Cure Amounts (to be uploaded on or before February 12, 2016).

**Access to the Debtors' books and records and copies of executory contracts and unexpired leases will be made available upon request to the Debtors' counsel.** The Sale Notice shall be filed with the Court by the Debtors within one (1) business day of entry of this Order.

    3.    <u>Bidding Procedures</u>. The following Bidding Procedures are approved and shall constitute the procedures for persons seeking to bid on the sale of substantially all of the Debtors assets (the "Sale").

- **Qualified Bidder:** Any person or entity expressing an interest in purchasing the Debtors' assets (a "Potential Bidder") must provide the Debtors with an executed confidentiality agreement in form and substance satisfactory to the Debtors and shall deliver the following Required Supporting Materials and Good Faith Deposit prior to the Bid Deadline which shall constitute its "Bid" to the Debtors and counsel as follows:

  Debtors:

  Worldwide Transportation Services, Inc.
  Attn: Alex Malek
  14400 NW 77th Court, Suite 200
  Miami, FL 33016

  with a copy to:

  Eyal Berger, Akerman, LLP, Attorneys for Debtors,
  Akerman LLP
  350 East Las Olas Blvd.
  Suite 1600
  Fort Lauderdale, FL 33301
  eyal.berger@akerman.com
  954 712-6071

- **Required Supporting Materials:**

i) **Executed APA**: An executed asset purchase agreement in the same form and having the same terms as the APA and reflecting a minimum purchase price of $1,350,500 (the "Topping Bid"), together with a markup or redline copy of the Potential Bidder's asset purchase agreement comparing same to the APA and reflecting any deviations from the APA. All consideration paid to acquire the Purchased Assets shall be for cash, with no financing contingencies. **A copy of the APA in word format will be provided by Debtor's counsel upon request.**

ii) **Proof Ability to Close**: All Potential Bidders must include as part of any bid appropriate evidence that demonstrates to the reasonable satisfaction of the Debtors that such bidder has the financial ability to consummate the transactions contemplated by their APA by the Closing Date including bank statements and financial statements. No Potential Bidder shall be entitled to bid and deemed to a Qualified Bidder unless the Debtors determine in their reasonable discretion that the Potential Bidder is financially qualified; provided that if the Potential Bidder proposes to finance the acquisition, then evidence of an unconditional lending commitment from a recognized banking institution in the amount of the cash portion of the purchase price of such bid or the ability to post an unconditional, irrevocable letter of credit from a recognized banking institution in the amount of the cash portion of the purchase price of such bid. **The Potential Bidder shall also provide a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed.**

iii) **Assumption of Executory Contracts and Unexpired Leases:** To the extent that the Potential Bidder proposes to include in its bid and the APA the assumption and assignment of any of the Debtors' executory contracts or unexpired leases, a schedule shall be attached to the APA showing such contracts or leases to be assumed and assigned together with evidence of the Potential Bidder's ability to provide adequate assurance of future performance of such contracts, such as audited financial statements of the Potential Bidder, information regarding the capitalization of the Potential Bidder, information allowing the Debtors to evaluate the value of any guaranties being provided by affiliates of a Potential Bidder of its obligations under any assumed and assigned executory contracts or leases (the "Adequate Assurance Package").

iv) **Good Faith Deposit:** A Potential Bidder must deliver with its Bid a good faith deposit equal to 10% of the bid's proposed purchase price in the form of a wire transfer or certified or cashier's check (the "Good Faith Deposit") payable to the trust account for the attorneys for the Debtors.

**A Potential Bidder satisfying the above requirements shall be deemed to be a Qualified Bidder and to have submitted a "Qualified Bid".**

**THE BID DEADLINE SHALL BE WEDNESDAY MARCH 2, 2016 AT 5:00 P.M. EST.**

**Auction.** An auction (the "Auction") of the Assets shall be conducted by the Debtors in the event there is at least one Qualified Bidder. The Auction shall take place at 10:00 A.M. (EST) on TUESDAY, MARCH 8, 2016 at the law offices of Akerman LLP, Three Brickell City Centre, 98 Southeast Seventh Street, Miami, FL 33131.

**ONLY A QUALIFIED BIDDER WHO HAS SUBMITTED A QUALIFIED BID WILL BE ELIGIBLE TO PARTICIPATE AT THE AUCTION.**

**The Qualified Bidder is not entitled to any break-up fee, termination fee or similar type of payment or reimbursement.**

**Bidding Increment.** The minimum bidding increment at the auction shall be $100,000 or such other amount as the Debtors determine is appropriate. The Debtors reserve the right to change the bidding increments at the Auction.

**Baseline Bid / Overbid Protection.** In the event there are one or more Qualified Bidders and an Auction is held, the Baseline Bid will be the sum of the Qualified Bid which proposes the highest and best economic consideration to the Debtors in the Debtors' sole business judgment conditioned upon the Qualified Bid being in equal to or in excess of $1,350,000.

**Acceptance of Qualified Bid.** The Debtors presently intend to consummate the sale with the Stalking Horse Bidder if there is no Auction. Otherwise, if an Auction is held the Debtors shall determine who has made the highest and best offer (the "Successful Bidder") and the Debtor is authorized to accept Back-Up bids. However, the Debtors' presentation to the Bankruptcy Court for approval of the bid made by the Successful Bidder does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted such Bid only when such bid has been approved by order of the Bankruptcy Court.

**Reservation of Rights.** At the conclusion of the Auction the Debtors shall determine which bid, if any, is the highest or otherwise best offer, and (i) may reject at any time, any bid that the Debtors determine in their sole discretion to be: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the sale transaction, or (c) contrary to the best interests of the Debtors, their estates and creditors.

**Return of Deposits.** The Good Faith Deposit of a Qualified Bidder shall be returned within three business days of the earlier of (a) the closing of a sale transaction on all or a portion of the Assets on which the Qualified Bidder made a bid or (b) 30 days after the Sale Hearing.

**Credit Bidding.** The Stalking Horse (defined below) may credit bid at the sale in an amount up to amount owed the Stalking Horse under its DIP Loan with the Debtors plus the amount outstanding on its first priority prepetition loan to the Debtors. Other

creditors, including the vehicle lessors, may credit bid as permitted under the Code. Credit bids of junior lienors, including the Primed Lienors, will need to include cash bids to satisfy the any senior liens.

4. <u>Assumed and Assigned Contracts.</u> The Debtors shall provide the other party to any unexpired leases or executory contracts of a Qualified Bidder's intention to assume its contract under the APA at least three (3) days prior to the Final Sale Hearing.

5. <u>Approval of Break Up Fee and Bid Procedures</u>. The Break Up Fee and bid procedures are approved and the APA shall form the basis for the Potential Bidders to bid as more fully set forth above. The provisions in the APA unique to the Stalking Horse may be deleted from the APA for use by Potential Bidders in submitting their Bid. **Notwithstanding anything contained herein or in the APA, the approval of the sale to the Stalking Horse under the APA for $1,250,000 subject to higher and better offers shall be considered at a final hearing to be held herein on February 26, 2016 at 11:00 a.m.**

6. <u>Advertising</u>. As soon as practicable the Debtors shall publish the notice of sale in the Daily Business Review for Dade, Broward and Palm Beach Counties. Also, to the extent practicable the Debtors shall publish the notice of sale in an industry periodical(s) and newsletter(s).

7. <u>Sale Hearing.</u> In the event an auction is held, a final sale hearing (the "Final Sale Hearing" on approval of the sale to the Successful Bidder shall be held before this court on **March 9, 2016 at 9:30 a.m.** at which time all interested parties shall have an opportunity to object to the Sale of the Debtors' assets through the Auction.

# # #

Copy furnished to:

Eyal Berger, Esq.
*(Attorney Berger is directed to serve a conformed copy of this Order and to file a Certificate of Service with the Court).*

**EXHIBIT "A"**

Exhibit

ASSETS TO BE SOLD AND EXCLUDED ASSETS

1. all machinery, furniture, equipment, inventory, tools, spare parts, supplies, materials and other personal property owned by Sellers and either (x) located on the Premises or (y) used in connection with the operation of the Business (the "**Equipment**");

2. all of the Sellers' title to, interest in and rights under the lease of the Business Premises (the "**Premises Lease**") and any personal property leases relating to the Premises or the operation of the Business to which the Sellers is currently a party (the "**Leases**");

3. all of Sellers' rights under the miscellaneous purchase orders, issued by the Sellers in connection with the operation of the Business to the extent outstanding on the Effective Date (the "**Miscellaneous Purchase Orders**");

4. all of the Sellers' title to, interest in and rights under any contracts and agreements relating to operation of the Business to which any of the Sellers is currently a party or under which any of the Sellers will have obligations or liabilities outstanding as of the Effective Date (as defined below) and all other customer contracts, all such contracts referred to in this I.A. 1.4 being set forth on Schedule Section 1(a)(iv) (collectively the "**Contracts**");

5. all of the Sellers' interest in and rights under the medallions, licenses and permits used by them in the operation of the Business set forth on Schedule Section 1(a)(v) including, without limitation, those issued by the State of Florida, Miami-Dade County, Florida, Broward county, Florida, and any departments or agencies thereof, and all international and regional airport authorities (collectively the "**Permits**");

6. selected Vehicles owned or leased by the Seller as determined by the Seller in its sole discretion as follows: within twenty-one (21 days) of the entry of the Bidding Procedures

Order, the Buyer will select, in its sole discretion, from the list of vehicles contained in Schedule Section 1(a)(vi), the vehicles or vehicle leases that will be sold, transferred, conveyed, assigned and delivered by the Sellers to the Buyer by this Agreement, subject to the terms of any financing applicable to the selected vehicle or the terms of any applicable vehicle lease (or such other terms or arraignments agreed to by the Buyer and the financing party or lessor with the twenty-one (21 day period)). Any such vehicle selected by the Seller being a "Vehicle" and collectively the "Vehicles." For the avoidance of doubt, the Sellers will retain all rights, title and interest in, and all obligations arising from or related to, any vehicle or vehicle lease that is not selected by the buyer within 21 days of the entry of the Bidding Procedure Order;

7. all of the Sellers' title to, interest in and rights to all computer system hardware currently used in connection with the Business;

8. all of the Sellers' title to, interest in and rights to all computer software used in the Business, together with the rights and subject to the restrictions and requirements set forth in any software licensing agreements to which the Sellers is subject;

9. all of the Sellers' title to, interest in and rights to all trademarks, trade names, internet and world wide web sites, domain names, email addresses and email accounts, including the name "Worldwide Limousine," and all other permutations and combinations of this name as used by Sellers in operation of the Business and all other licenses, service marks and registrations and the goodwill and going concern value associated with the Business and all other intellectual property or intangible assets relating to the Business and Sellers of every nature and kind;

10. all of the Sellers' title to, interest in and rights to all current telephone numbers used in the conduct of the Business;

{37255807;2}

- 2 -

- 3 -

11. all books and records of the Business;

12. any and all other assets owned and used by the Sellers in connection with the Business;

13. <u>Excluded Assets</u>. The Purchased Assets shall not include the following assets (the "**Excluded Assets**"):

    a. any capital stock or equity interests in the Sellers;

    b. the consideration received by the Sellers pursuant to this Agreement;

    c. the rights of the Sellers under this Agreement and such other documents and agreements entered into by Sellers in connection therewith;

    d. all cash and cash equivalents held or owned by Sellers;

    e. all accounts receivables and proceeds of accounts receivables;

    f. any and all Plans held or maintained by the Sellers;

    g. all right, title and interest of Sellers in any insurance policies and all rights of Sellers to insurance refunds, reimbursements and other payments under such policies; provided, however, that any proceeds payable under any policy of insurance for any damage to any Transferred Asset(s) for damage arising prior to or on the Effective Date shall not be deemed an Excluded Asset and shall be remitted to Buyer to the extent received by Sellers following the Closing within (5) business days of the receipt of such funds; and

    h. any and all assets of Sellers not used in connection with the Business.