ORDERED in the Southern District of Florida on  Feb. 9, 2016

Laurel Myerson Isicoff, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| WORLDWIDE TRANSPORTATION SERVICES, INC., | Case No. 16-11136 |
| WORLDWIDE INVESTMENTS I, LLC, | Case No. 16-11183 |
| WORLDWIDE INVESTMENTS II, LLC | Case No. 16-11185 |
| WORLDWIDE INVESTMENTS III, LLC | Case No. 16-11189 |
| Debtors. | |
| _____/ | |

**SECOND INTERIM ORDER (I) AUTHORIZING (A) SECURED POSTPETITION FINANCING PURSUANT TO 11 U.S.C. SECTIONS 105, 361 AND 364(c); (B) USE OF CASH COLLATERAL AND (II) CONTINUING PRELIMINARY HEARING (ECF No. 34)**

This matter came on to be heard on February 3, 2016 at 10:00 a.m. (the "Continued Preliminary Hearing"), upon the debtors, Worldwide Transportation Services, Inc. ("Worldwide"), Worldwide Investments I, LLC ("WWI"), Worldwide Investments II, LLC

{37471308;1}

"(WWII"), and Worldwide Investments III, LLC ("WWIII) (WWI, WWII, and WWIII are collectively referred to as the **"Affiliate Debtors"** and together with Worldwide the **"Debtors"),** Amended Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To Obtain Secured Credit And Use Cash Collateral, (II) Granting Limited Stay Relief For The Lender To Perfect Postpetition Loan And (III) Scheduling Final Hearings (the "**Motion**") (ECF No. 34), and the Court having been advised that i) no vehicles shall be included in the Second Interim DIP Lien (defined below) in favor of the Lender; and, ii) the Primed Lenders consent to the granting of the Motion and the priming of their claimed liens, in exchange for the adequate protection provided for herein; the having reviewed and taken judicial notice of the Debtors' schedules filed herein, heard argument of counsel, due and sufficient notice of the Motion having been provided, good and sufficient cause appearing and based on the evidence and for the reasons stated on the record at the Continued Preliminary Hearing, the Court makes the following

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  Unless otherwise indicated herein, all capitalized terms used but not defined herein shall have the meanings given in the Motion. The term "Primed Lenders" shall mean American Express Bank FSB, MTG Group, Inc., Washington Business Bank and Strategic Funding Source, Inc.

B.  On January 26 and 27 the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

C.  The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

D. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. Section 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. Section 157(b)(2).

E. On January 27, 2016, the Debtors and MTG Florida LLC (the "Lender") entered into that certain Senior Secured Debtor-In-Possession Credit Agreement (the "Loan Documents") attached as **Exhibit "B"** to the Motion. The Lender also lent funds to the Debtors pre-petition secured by a claimed first priority lien in all the assets of the Affiliate Debtors.

F. On January 29, 2016 a preliminary hearing was held on the Motion and the Court authorized interim financing from the Lender in favor of the Debtors in the total amount of $160,289.20 (the "First Interim DIP Loan") for the purpose of paying the Wage Obligations and avoiding irreparable harm. (ECF No. 33)

G. The Debtors are unable to operate solely with use of cash collateral.

H. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense in an amount necessary to fund the Debtor's operations until a sale of their assets can be held and financing on a postpetition basis is not otherwise available to to the Debtors without the Debtors granting, pursuant to Bankruptcy Code Section 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(b) of the Bankruptcy Code and the granting of a senior priming lien pursuant to Bankruptcy Code Section 364(d).

I. The Primed Lenders consent to the relief granted herein, including the priming of their liens in exchange for the adequate protection set forth below.

J. Notice of the Continued Preliminary Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the creditors holding the

20 largest unsecured claims against each of the Debtors; and (iii) the Primed Lenders which comprise the known holders of pre-petition liens against the Debtors' property. No official committee of unsecured creditors (the "Committee") has as yet been appointed in the Chapter 11 Cases.

K. The DIP Loan has been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and any credit extended and loans made to the Debtors pursuant to this Second Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code and the DIP Lender shall have all of the protections thereunder.

L. Based on the record before this Court, it appears that the terms of this Second Interim Order, including, without limitation, the terms of the DIP Loan and use of Cash Collateral, are fair and reasonable, reflect the Debtors' exercise of sound and prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M. The Debtors have requested immediate entry of this Second Interim Order so that the DIP Lender will advance up to the amount of $169,710.80 immediately making the total principal amount of the DIP Loan $330,000, for the purpose of paying the Debtors' operating expenses as set forth in the Approved Budget, including payments for: Fuel, tolls, airport and seaport fees, Farmouts (sub-contracted companies providing car service to Worldwide's' customers), repairs and maintenance, LMS and GPS software, and rent for office space and car storage.

M. The relief granted herein to use Cash Collateral and obtain the DIP Loan is

necessary to avoid immediate and irreparable harm to the Debtors' estates. This Court concludes that entry of this Second Interim Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the operating debtor, Worldwide, to continue servicing its contracts and providing services to its clients without interruption until a sale of the Debtors' assets.

  N.  The assets of the Affiliate Debtors are not subject to any pre-petition liens other than the pre-petition lien of the Lender pursuant to judicial notice of UCC and lien search.

  Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Preliminary Hearing, good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED DETERMINED AND DECREED** that:

  1.  <u>Motion Granted</u>. The Motion is granted.

  2.  <u>Borrowing; Use of Cash Collateral</u>. Subject to the Approved Budget which may be modified or supplement from time to time by additional budgets to which the Lender agrees and solely in compliance therewith and subject further to the terms and conditions of this Second Interim Order and the Loan Documents, (a) Lender hereby consents, and the Court determines, based on the agreement of the Primed Lenders as set forth herein, that the Primed Lenders are adequately protected, with respect to the Debtors' use of Cash Collateral, and (b) Lender will provide the DIP Loan in accordance with the terms of the Loan Documents. A true and correct copy of the revised Approved Budget is attached hereto as <u>Exhibit "A"</u>.

  3.  <u>Authorization For Interim DIP Loan and Permission to Use Cash Collateral</u>. The Debtors are expressly authorized and empowered to (i) obtain additional credit pursuant to the Loan Documents on an interim basis in an amount not to exceed $169,710.80 (the "Second Interim DIP Loan") for the purpose of paying the expenses set forth in the Approved Budget and

(ii) to use Cash Collateral based on the consent of the Lender to use the proceeds of the First Interim DIP Loan and Second Interim DIP loan and the granting of adequate protection to the Primed Lenders. The Debtors may exceed the dollar amount in any category included in the Approved Budget by 20% conditioned upon the Debtors overall use of cash over the 60-day period being limited to $1,418,272.63 (10% over the overall 60-day projected budget).

4. <u>Agreed Adequate Protection of Primed Lenders.</u> As adequate protection of Primed Lenders' interests in the Collateral, including use of cash collateral, pursuant to Sections 361, 363, 364 and 552(b) of the Bankruptcy Code and the agreement of the Primed Lenders, the liens of the Primed Lenders shall attach to any proceeds of the sale of the Collateral pursuant to Section 363 of the Bankruptcy Code or any confirmed plan of reorganization, subject to and junior to the DIP Indebtedness (defined below), the DIP Liens and the Carve Out and shall be paid from the proceeds of the sale subject to the DIP Indebtedness, the DIP Liens and the Carve Out. Each pre-petition Primed Lender other than the MTG Florida, LLC, shall be paid as adequate protection the following amount on a weekly basis commencing February 12, 2016 and terminating at the time of the closing of the sale of substantially all of the Debtors' assets or as otherwise ordered by the Court, which adequate protection payments shall be applied to any allowed secured claim of the Primed Lender as set forth in the loan documentation between the parties:

| | |
|---|---|
| American Express Bank FSB | $500. |
| Washington Business Bank | $500. |
| Strategic Funding Source | $500. |

5. <u>The DIP Indebtedness.</u> The principal of both the First Interim DIP Loan and Second Interim DIP Loan in the total amount of $330,000 together with and all other

{37471308;1}                                6

indebtedness and obligations incurred by the Debtors on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute, pursuant to this Second Interim Order and the Interim DIP Loan (ECF No. 33) which may now or from time to time hereafter be owing by the Debtors to Lender (including accrued and unpaid interest, pursuant to the Loan Documents) are referred to herein as the "DIP Indebtedness".

6.  Interest, Fees, Costs and Expenses. The DIP Indebtedness shall bear interest at the applicable rates (including default and non-default interest rates) as set forth in bold in the Motion and in the Loan Documents. Notwithstanding the foregoing, nothing in this Second Interim Order shall be construed to limit or otherwise impair the joint and several liability of the Debtors for all of the DIP Indebtedness under the Loan Documents. Notwithstanding anything to the contrary set forth in the Loan Documents, the Lender shall not be entitled to any claim against any of the Debtors' estates for payment of any of its attorney's fees, costs or other expenses incurred in enforcing the Loan Documents or in recovering the DIP Indebtedness.

7.  Termination of the DIP Loan and Use of Cash Collateral. Lender's obligation to provide the Second Interim DIP Loan and Lender's consent to the use of the cash collateral shall immediately and automatically terminate (except as Lender may otherwise agree in writing in its sole discretion), and all DIP Indebtedness shall be immediately due and payable in cash upon the earlier of (i) the date of completion of a Section 363 Sale of substantially all of the Debtors' assets, or (ii) April 26, 2016. In the event of a default under the Loan Documents the Lender may declare the DIP Indebtedness immediately due and owing.

**8.**  Security for DIP Indebtedness/DIP Liens. As security for the DIP Indebtedness, the Lender is granted the following security and priming liens (the "DIP Liens") in all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether

real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all instruments, documents, chattel paper, inventory, cash in advance deposits, general intangibles, payment intangibles, goodwill, intellectual property, software, machinery, leasehold interests, equipment, fixtures, aircraft, vehicles, trademarks, trade names, licenses, causes of action **(excluding, however ALL VEHICLES OF THE DEBTORS and actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under §§ 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof (collectively, "Avoidance Actions"))** and any proceeds or recoveries of any actions against third parties including tax refund claims, commercial tort claims and insurance proceeds and the proceeds, products, rents and profits of all of the foregoing (the "Action Proceeds"). **For the avoidance of doubt, the Collateral shall not include any of the Debtors' vehicles or any right to control or prosecute any of the underlying causes of action relating to the pledged Action Proceeds the prosecution of which underlying causes of actions shall remain in the exclusive control of the Debtors and their bankruptcy estates.**

      9.      <u>Priming Lien.</u>  Pursuant to Section 364(d)(1) of the Bankruptcy Code, the DIP Liens shall be senior to all other security interests and liens in property of the Debtors' estates in this or any subsequent or superseding cases (including, without limitation, any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto); and any security interest or lien upon the Collateral which is avoided or otherwise preserved for the benefit of the Debtors' estates under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the DIP Liens.

10. <u>Superpriority Claim</u>. Subject to the Carve Out, the DIP Lender is granted under Bankruptcy Code Section 503(b)(1) an allowed administrative expense claim in the amount of DIP Indebtedness pursuant to Bankruptcy Code Section 364(c)(1), having priority over any and all administrative expenses of the kinds including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code (the "Superpriority Claim").

11. <u>Perfection of Second Interim DIP Lien</u>. The Second Interim DIP Lien shall be, and is hereby deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be required to effect such perfection; <u>provided, however,</u> that notwithstanding the provisions of Section 362 of the Bankruptcy Code which stay is lifted for the limited purpose of allowing perfection, the (i) Lender may, at its sole option, file or record or cause the Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as Lender may require, and (ii) Lender may require the Debtors to deliver to Lender any chattel paper, instruments or securities evidencing or constituting any Collateral, and the Debtors are directed to cooperate and comply therewith. If Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Lender, in accordance with the Loan Documents or this Second Interim Order, elects to take possession of any Collateral, all such landlord or warehouse lien waivers or

other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. The Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Second Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property.

12. Carve Out. The DIP Liens, Superpriority Claim, any 507(b) claims and any liens of the Primed Lenders shall be subject to and subordinate to a "Carve Out" for: i) Akerman LLP's professional fees and expenses in an amount not to exceed $65,000; ii) all U.S. Trustee fees; and iii) all fees owed to the Clerk of the Bankruptcy Court. Akerman LLP may be paid its fees and expenses as may be approved by the Court from the $65,000 Carve Out without further order of Court.

13. Waiver. The Debtors and their estates (and any party in interest acting on behalf of the Debtors) hereby irrevocably waive, and are barred from asserting or exercising any right (a) without Lender's prior written consent (which may be withheld in their sole discretion) or (b) without prior indefeasible payment and satisfaction in full in cash of the DIP Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under Section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any Collateral, which are *pari passu* with or senior to the Second Interim DIP Liens granted herein and by the Interim Order (ECF No. 33); (ii) to return goods pursuant to 546(h) of the Bankruptcy Code to any creditor of the Debtors or to consent to any creditor taking any setoff against any of such creditor's pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise; (iii) to seek a surcharge of the Collateral under Section 506(c) of the Bankruptcy

Code; or, (iv) to modify or affect any of the rights of the Lender under this Second Interim Order or any Loan Documents by any order entered in any of the Chapter 11 Cases or any successor cases.

14.     Books and Records.  The Debtors shall permit Lender and any authorized representatives designated by Lender (including, without limitation, its auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Debtors, including the Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss any Debtor's affairs, finances and business with such Debtors' officers and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested.  Without limiting the generality of the foregoing, the Debtors shall promptly provide to Lender any information or data reasonably requested to monitor the Debtors' compliance with the covenants and the provisions of the Loan Documents and this Order.

15.     Effect of Dismissal, Conversion or Substantive Consolidation.  If any Chapter 11 Case is dismissed, converted, otherwise superseded or substantively consolidated, Lender's rights and remedies under this Order and the Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, or substantive consolidation, all of the terms and conditions of this Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

16.     Order Binding on Successors.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of Lender and the Debtors and their respective successors and assigns (including any trustee or other estate representative appointed as a

representative of the Debtors' estate or of any estate in any successor cases). No third parties are intended to be or shall be deemed to be third party beneficiaries of this Second Interim Order or the Loan Documents.

17. **No Liability to Third Parties.** Lender shall not (i) have liability to any third party nor shall it be deemed to be in control of the operations of the Debtors or to be acting as a "controlling person", "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, the Unites States Comprehensive, Environmental Response, Compensation and Liability Act as amended, or any similar Federal or state statute), or owe any fiduciary duty to the Debtors, its creditors or its estate, and (ii) Lender's relationship with the Debtors shall not constitute nor be deemed to constitute a joint venture or partnership with the Debtors.

18. **Order Binding Upon Parties in Interest.** All of the provisions of this Second Interim Order shall be final and binding on the Debtors (including, without limitation, their successors and assigns), the Debtors' shareholders, and all creditors and other parties in interest, including any Chapter 11 or Chapter 7 trustee hereinafter appointed.

19. **Effect of Modification of Second Interim Order.** The Debtors shall not, without Lender's prior written consent (which shall be given or refused in its sole discretion), seek to modify, vacate or amend this Second Interim Order or any Loan Documents. If any of the provisions of this Second Interim Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court without Lender's prior written consent, such stay, modification or *vacatur* shall not affect the validity of any obligation outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such obligations.

Notwithstanding any such stay, modification or vacatur, any obligation outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Second Interim Order, and Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such obligations.

20. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and Lender have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code.

21. **<u>Final Hearing</u>. The final hearing on the Motion shall be held on February 26, 2016 at 11:00 a.m., at the Clyde Atkins United States Courthouse, 301 N. Miami Avenue, Courtroom 8, Miami, Florida, 33128**

22. <u>Service of Order.</u> The Debtors shall promptly serve a copy of this Order, by regular mail upon (i) the lenders defined as the Primed Lenders in the Motion; (ii) the creditors holding the 20 largest unsecured claims of each of the Debtors, or the Committee, if appointed; and (iii) any other party which theretofore has filed in the Chapter 11 Cases a request for special notice with this Court and served such request upon Debtors' counsel.

23. <u>Objections Overruled or Withdrawn</u>. All objections to the entry of this Second Interim Order have been withdrawn or are hereby overruled.

24. <u>Controlling Effect of Order</u>.  To the extent any provisions in this Second Interim Order conflict with any provisions of the Motion, or any Loan Document the provisions of this Second Interim Order shall control.

25. <u>Order Effective</u>.  This Second Interim Order shall be effective *nunc pro tunc* to February 3, 2016 at 11:30 a.m.

# # #

Submitted by:

Joanne Gelfand
Eyal Berger
Akerman, LLP.
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
eyal.berger@akerman.com
joanne.gelfand@akerman.com

<u>Copy furnished to:</u>
Eyal Berger, Esq.
*(Attorney Berger is directed to serve a conformed copy of this Order and to file a Certificate of Service with the Court).*

{37471308;1}   14

**EXHIBIT "A"**

# Worldwide Transportation Services Inc.
## 60 DAY CASH FLOW PROJECTION

|  | 1-30 | 31-60 | 60 DAY TOTAL |
|---|---:|---:|---:|
| **PROJECTED CASH INCOME:** | | | |
| 4000 Collection on Billings | 450,000.00 | 511,250.00 | 961,250.00 |
| **PROJECTED CASH EXPENSES:** | | | |
| 5001 Farmouts | 210,000.00 | 67,500.00 | 277,500.00 |
| 5120 Vehicle Lease and Payments | 75,000.00 | 150,000.00 | 225,000.00 |
| 5140 GPS / Response / Software | 4,800.00 | 1,200.00 | 6,000.00 |
| 5200 Licenses & Permits | 1,099.06 | 1,099.06 | 2,198.13 |
| 5300 Airport and Seaport Fees | 4,484.74 | 8,804.74 | 13,289.47 |
| 5501 Parking | 1,432.87 | 2,992.87 | 4,425.73 |
| 5502 Tolls - Sunpass | 4,055.41 | 5,375.41 | 9,430.83 |
| 5601 Fuel | 9,321.59 | 21,321.59 | 30,643.19 |
| 5800 Passenger Amenities | 1,700.00 | 2,900.00 | 4,600.00 |
| 5900 Subcontracted-Chauffeurs Pay | 67,500.00 | 133,125.00 | 205,125.00 |
| 5900 Subcontracted-Chauffeurs (Prepetition wages) | 180,000.00 | - | 180,000.00 |
| 5899 Commision Expense | 3,708.34 | 5,208.34 | 8,916.68 |
| 6152 Collision, Repairs and Maint | 35,600.00 | 21,360.00 | 56,960.00 |
| 6160 Vehicles EPA Report | 466.80 | 466.80 | 933.60 |
| 6185 Traffic Violations | 1,702.43 | 1,702.43 | 3,404.86 |
| 6190 Towing | 397.09 | 397.09 | 794.18 |
| 6195 Car Wash Supplies | 190.22 | 2,190.22 | 2,380.44 |
| 6175 Car Storage | 6,955.00 | 6,955.00 | 13,910.00 |
| 6176 Office Rent - Miami Lakes | 8,071.15 | 8,071.15 | 16,142.30 |
| 6280 Rep & Maint - Non-Vehicle | 262.63 | 3,262.63 | 3,525.26 |
| 6201 Corporation licenses & Permits | 293.25 | 293.25 | 586.50 |
| 6205 Telephone Expense | 2,484.00 | 2,484.00 | 4,968.00 |
| 6220 Internet, Cable and Domain | 1,488.57 | 1,488.57 | 2,977.15 |
| 6225 Office Supplies | 584.19 | 584.19 | 1,168.37 |
| 6230 Printing and Reproduction | 765.17 | 765.17 | 1,530.33 |
| 6235 Postage and Delivery | 461.63 | 461.63 | 923.25 |
| 6255 Information Technology | 362.59 | 362.59 | 725.18 |
| 6260 LMS Software | 22,700.00 | 2,700.00 | 25,400.00 |
| 6310 Adequate Protection Payments | 6,000.00 | 6,000.00 | 12,000.00 |
| 6348 Payroll Fees - ADP | 681.13 | 681.13 | 1,362.25 |
| 2026 Health Insurance Expense | 2,779.28 | 2,779.28 | 5,558.57 |
| 6203 WAGES RESERVATIONS | 8,400.00 | 10,400.00 | 18,800.00 |
| 6502 WAGES DISPATCH | 8,400.00 | 10,400.00 | 18,800.00 |
| 6504 WAGES DETAILERS | 6,400.00 | 7,400.00 | 13,800.00 |
| 6505 WAGES ACCOUNTING | 6,000.00 | 6,000.00 | 12,000.00 |
| 6506 WAGES ADMINISTRATION | 6,000.00 | 6,000.00 | 12,000.00 |
| 6507 WAGES MANAGER | 12,500.00 | 12,500.00 | 25,000.00 |
| 6508 WAGES OPERATION | 6,000.00 | 6,000.00 | 12,000.00 |

# Worldwide Transportation Services Inc.
## 60 DAY CASH FLOW PROJECTION

|  | 1-30 | 31-60 | 60 DAY TOTAL |
|---|---:|---:|---:|
| 6515 PAYROLL Taxes & Agreement | 30,370.00 | 8,870.00 | 39,240.00 |
| 6605 Utilities | 1,171.84 | 1,171.84 | 2,343.67 |
| 6610 Bank Fee | 1,237.91 | 1,237.91 | 2,475.81 |
| 9999 Marketing Fee | 15,000.00 | - | 15,000.00 |
| **TOTAL CASH EXPENSES** | 756,826.87 | 532,511.87 | 1,293,838.75 |
| **NET CASH FLOW INCOME/(LOSS)** | (306,826.87) | (21,261.87) | (328,088.75) |